Rasheed Ibn BILAL, et al., Respondents,

v.

NORTHWEST AIRLINES, INC., et al., petitioners, Appellants.

No. C4–94–416.

Supreme Court of Minnesota.

Sept. 22, 1995.

William M. Hart, Joseph W.E. Schmitt, Richard L. Pemberton, Jr., Donald Chance Mark, Jr., Minneapolis, for appellants.

Stephen W. Cooper, Kathryn J. Cima, Minneapolis, for respondents.

## OPINION

ANDERSON, Justice.

On August 1, 1991, plaintiff Renae Sameerah Bilal intended to fly on a Northwest Airlines (NWA) flight from Minneapolis/St. Paul to Sacramento, California. Ms. Bilal planned to use a reduced-rate travel pass. Passengers using a reduced-rate travel pass are designated "non-revenue" passengers and must adhere to a dress code. On August 1, 1991, Ms. Bilal's attire violated NWA's dress code.

The NWA supervisor who took Ms. Bilal's travel pass informed Ms. Bilal that her attire was inappropriate. When Ms. Bilal asked how she should be dressed, the supervisor responded, "You should dress as if you were going to church." Ms. Bilal, who testified that, as a Muslim, she attends a mosque, not a "church," reacted by stating, "Oh no, you will not discriminate against me." Ms. Bilal ultimately chose not to take the flight to Sacramento, although NWA never prohibited her from taking the flight.

Ms. Bilal and her husband, Rasheed Ibn Bilal, sued NWA, asserting a claim of religious discrimination under the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.01. The trial court concluded that the "unwarranted reference to religion denied Ms. Bilal the full and equal enjoyment of NWA's services and constitutes an unfair discriminatory practice." The court ordered that judgment be entered in favor of both Mr. and Ms. Bilal.

In a split decision including a concurrence and a dissent, the Minnesota Court of Appeals affirmed the judgment in favor of Ms. Bilal, but reversed the judgment in favor of Mr. Bilal. The court of appeals awarded costs and attorney fees incurred in the appeal to Ms. Bilal and denied NWA's request for costs and attorney fees. NWA appeals to this court, claiming that the trial court erred in concluding that the supervisor's reference to religion constituted an unfair discriminatory practice. NWA also claims that it should have been awarded costs and attorney fees for overturning on appeal the judgment in favor of Mr. Bilal. We reverse with respect to the claim of religious discrimination, and we affirm the court of appeals' denial of NWA's request for attorney fees.

I.

At all times relevant to this case, plaintiff Rasheed Ibn Bilal was actively employed by defendant Northwest Airlines, Inc. (NWA) as an aircraft cleaner. As a privilege of employment, NWA provides its active employees with a travel pass program, which allows NWA employees, spouses and eligible dependents to travel on NWA flights at a significantly reduced rate. Passengers using the NWA travel pass program are referred to as non-revenue passengers.

A dress code applies to all non-revenue passengers. NWA provides its employees with a booklet entitled, "Pass and Reduced Rate Transportation Privileges." This booklet explains the requirements of the dress code. The dress code provides that the following attire is not acceptable for female non-revenue passengers:

> Any denim garments, sweatsuits, sweatshirts, muumuus, T-shirts, tank tops, short

shirts (any part of midriff bare), any type of jeans, athletic-type shoes, sandals/shoes without hosiery and any other highly casual apparel.

In addition to being explained in the booklet, the dress code is printed on the travel pass itself, on the ticket jacket, and on a loose-leaf insert that is ordinarily included with the travel pass in the ticket jacket.

On August 1, 1991, plaintiff Renae Sameerah Bilal, Mr. Bilal's spouse, planned to use a reduced-rate travel pass to fly from Minneapolis/St. Paul to Sacramento, California. Ms. Bilal, who is Muslim, intended to travel to Sacramento to meet with a group of women to organize a national conference for women of the Muslim faith. Ms. Bilal had used the travel pass program on numerous prior occasions and was familiar with the requirements of the dress code. But on August 1, 1991, Ms. Bilal wore open-toe sandals without any stockings or hosiery. Therefore, Ms. Bilal's attire violated the dress code. In addition to her footwear, Ms. Bilal wore dress pants, a long tunic and a headscarf.

Mr. and Ms. Bilal arrived at the Minneapolis/St. Paul International Airport at approximately 6:00 p.m. After a delay, the flight began boarding passengers at approximately 9:00 p.m. NWA employee Barbra Patrick, a supervisor of customer service, took Ms. Bilal's ticket at the boarding gate, and Ms. Bilal proceeded down the jetway toward the aircraft. Mr. Bilal then left the airport. At trial, Patrick contended that she did not realize that Ms. Bilal was a non-revenue passenger until she saw Ms. Bilal's reduced-rate travel pass. Upon realizing that Ms. Bilal was a non-revenue passenger and observing that her attire did not conform to the dress code, Patrick followed Ms. Bilal down the jetway and asked to speak with her. Ms. Bilal responded, "Sure." Patrick and Ms. Bilal remained in the jetway, but they left the line of passengers and walked up the jetway away from the aircraft.

Patrick asked Ms. Bilal if she was aware of the dress code for non-revenue passengers, and Ms. Bilal responded that she was. Patrick then informed Ms. Bilal that her attire was inappropriate. Patrick testified to the following version of the episode:

After I had taken her ticket, I noticed she was a non-revenue passenger and she didn't have on—she had on light sandals and no nylons, and I stopped her on the jetway before she got into the plane and brought her up to the middle of the jetway and proceeded to tell her about her attire of not having on—having on the sandals and no nylons.

After Ms. Bilal asked how she should dress, Patrick, a Baptist, told Ms. Bilal, "You should dress as though you are going to church."

Ms. Bilal, who testified that, as a Muslim, she attends a mosque, not a "church," responded, "Oh, no, you will not discriminate against me." Ms. Bilal testified that she felt discriminated against because "that was not [Patrick's] job to decide what was appropriate clothing as long as I was within the dress code." While still in the jetway, Ms. Bilal instructed Patrick to get her manager. Ms. Bilal returned to the gate waiting area, and Patrick followed her. There is no evidence that any other NWA employee or any of the passengers waiting to board the flight heard the conversation that transpired between Ms. Bilal and Patrick.

Although Patrick never told Ms. Bilal that she was prohibited from taking the flight to Sacramento, Ms. Bilal believed that Patrick had prohibited her from boarding the aircraft. Patrick testified that she informed Ms. Bilal that she was not prohibited from taking the flight to Sacramento. Indeed, the parties do not dispute that NWA did not prohibit Ms. Bilal from taking the flight. But Ms. Bilal testified that she "had no intentions at that point of getting on the airplane" because she was "humiliated" and "really embarrassed." Consequently, Ms. Bilal chose not to take the flight, told Patrick to let the plane go, and again told Patrick that she wanted to see Patrick's supervisor.

Patrick called her supervisor, Manuel Azevedo, who then held the position of Service Manager of Passenger Service. After a short time, Azevedo arrived at the gate area and began speaking with Patrick. As Ms. Bilal approached Patrick and Azevedo, Patrick was describing the incident to Azevedo. Because Ms. Bilal disagreed with Patrick's

description, she interrupted and related to Azevedo her own explanation of the incident. Azevedo and two other NWA employees who witnessed Ms. Bilal's behavior testified that Ms. Bilal was "loud," "belligerent," "angry," and "disruptive."

Ms. Bilal recounted her version of the incident to Azevedo and informed him, "This is the way I dress when I go to prayer. I don't even go to church. I go to a mosque." Ms. Bilal asked Azevedo if he supported Patrick, and Azevedo responded that he did. Azevedo testified, "I believe what I said was that because of the lack of shoes and stockings that, yes, I backed Ms. Patrick. I didn't have a problem with that." Ms. Bilal asked for and received the names of both Patrick and Azevedo, and then she left the airport.

The Bilals filed suit against NWA and its employees, originally asserting claims of religious discrimination, intentional infliction of emotional distress, breach of contract, defamation, negligent hiring and negligent supervision and training. The trial court granted in part NWA's motion for summary judgment, dismissing the claims of infliction of emotional distress, breach of contract, defamation and negligent hiring. The matter then proceeded to trial on the claims of religious discrimination and negligent supervision and training.

The claim of religious discrimination was brought under the Minnesota Human Rights Act, Minn.Stat. § 363.01 (1991), and was tried to the court, while the claim of negligent supervision and training was tried to a jury. At the completion of the Bilals' case-in-chief, the court directed a verdict in favor of NWA on the claim of negligent supervision and training. The court retained the jury in an advisory capacity. The advisory jury concluded that NWA had not intentionally denied Ms. Bilal the full and equal enjoyment of NWA's services and did not intentionally take any adverse action with respect to the conditions, privileges or compensation of Mr. Bilal's employment.

The trial court rejected the conclusions of the advisory jury and ordered judgment in favor of the Bilals. The court found that at the time of the alleged discriminatory episode, Ms. Bilal "was dressed in traditional Muslim clothing" and was "readily identifiable" as a Muslim. The court found that

[t]he word 'church' is a religious term which is associated with Christian religion and is not consistent with the religious practices of Muslims. To instruct a Muslim to dress as if she were going to church is inappropriate. Patrick's religious remark was offensive to Ms. Bilal because she is a Muslim, and Muslims attend mosques, not church.

The court concluded that "Patrick's unwarranted reference to religion denied Ms. Bilal the full and equal enjoyment of NWA's services and constitutes an unfair discriminatory practice."

The trial court rejected NWA's explanation that Patrick's actions in stopping and questioning Ms. Bilal were motivated by a legitimate, nondiscriminatory effort to enforce the dress code against a non-revenue passenger. The court acknowledged that NWA had the right to enforce its dress code against non-revenue passengers, but concluded that NWA had failed to articulate "a legitimate, nondiscriminatory reason for Patrick's statement to Ms. Bilal that she should dress as if she were going to church." In a supplemental order and memorandum, the court concluded that even if enforcement of the dress code qualified as a legitimate, non-discriminatory reason for Patrick's comment, "plaintiffs have shown by a preponderance of the evidence that NWA's proffered reason for its employees' actions is not worthy of credence, but is instead a coverup for discrimination."

The trial court specifically found that Patrick was not aware that Ms. Bilal was a Muslim:

* * * after becoming aware that Ms. Bilal was an African American as opposed to a foreigner, Patrick *assumed* that Ms. Bilal was a Christian who attends church rather than a Muslim who attends mosques and, *because of this stereotypical religious assumption,* told her that she should dress as if she were going to church.

(Emphasis in original.) Nevertheless, in apparent conflict with that finding, the court concluded that "Patrick's statement that Ms.

Bilal should dress as if she was going to church provides direct evidence that religion was a causative factor in NWA's actions regarding the August 1, 1991, incident." Consequently, the court ordered that judgment be entered in favor of both Ms. and Mr. Bilal on the claim of religious discrimination.

The trial court awarded $3,500 to Ms. Bilal for her mental anguish, emotional distress and personal humiliation. The court also awarded $500 to Mr. Bilal for his mental anguish, emotional distress and personal humiliation. The court ordered NWA to pay a civil penalty to the general fund of the State of Minnesota in the amount of $1,000. Finally, the court ordered NWA to pay the Bilals' attorney fees and costs in the amount of $23,753.72. The court denied NWA's motion for amended findings of fact and conclusions of law, and on December 9, 1993, judgment was entered.

The Minnesota Court of Appeals affirmed the judgment in favor of Ms. Bilal, but reversed the judgment in favor of Mr. Bilal, holding that there is no legal authority for damages based on a derivative discrimination claim and the MHRA does not authorize compensation to one whose spouse is the victim of discrimination. The court of appeals awarded $3,500 to Ms. Bilal for costs and attorney fees incurred in the appeal and denied NWA's request for costs and attorney fees.

NWA appeals, claiming the trial court erred in concluding that Patrick's reference to religion constituted an unfair discriminatory practice. NWA also claims that the court of appeals should have awarded NWA costs and attorney fees for overturning on appeal the judgment in favor of Mr. Bilal.

## II.

Minnesota Statute section 363.03, subdivision 3(1) (1991) prohibits religious discrimination in a place of public accommodation, providing in pertinent part that it is a discriminatory practice:

> to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation

because of race, color, creed, religion, disability, national origin, or sex.

The parties concede that NWA is a public accommodation. See Minn.Stat. § 363.01, subd. 33 (defining "Public accommodations" under the MHRA). Ms. Bilal's discrimination claim is one of disparate treatment because she is claiming that NWA and its employees treated her less favorably due to her religious affiliation or beliefs. See Minneapolis Police Dept. v. Comm'n on Civil Rights, 425 N.W.2d 235, 239 n. 1 (Minn.1988). To prove a claim of disparate treatment, " 'proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.' " Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 441 n. 12 (Minn.1983) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335–36 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977); see also Minneapolis Police Dept. v. Comm'n on Civil Rights, 425 N.W.2d at 239 n. 1. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. Hubbard, 330 N.W.2d at 441–42 n. 12 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). We therefore address the issue of whether NWA and its employees intentionally discriminated against Ms. Bilal because of Ms. Bilal's religion.

The trial court found that NWA had the right to enforce its dress code against non-revenue passengers. The court also found that Ms. Bilal's attire violated the dress code applicable to nonrevenue passengers. Patrick testified, and the court found, that she deliberately chose to refer to "church" in her comment because she assumed that Ms. Bilal was a Christian person who would understand the reference. Admitting that she instructed Ms. Bilal that she should dress as though she were going to church, Patrick explained, "I made that statement after I talked to Ms. Bilal and found out that she was Afro–American just like I was, and the inference on church was the same—would have been the same metaphor as I would have used as another Afro–

American would use. I didn't mean anything other by it."[1]

When Patrick was asked on cross-examination what it was about Ms. Bilal's status as an African–American that induced Patrick to make the church reference, Patrick responded:

> As I stated before when she opened her mouth and spoke in English she did not have an accent like she was from another country or anything, I assumed she was an Afro–American and that's why I made the comment about the church in a metaphor of other Afro–Americans making a comment about church.

The essence of Patrick's testimony shows that Patrick's proffered explanation for her comment was not a normative evaluation of Ms. Bilal's religious affiliation or beliefs. Furthermore, the word "church" does not possess the inherently derogatory qualities of an epithet.[2] Although we believe that instructing someone that she should dress as though going to church may not be helpful in guiding compliance with the NWA dress code, that is not the issue. The issue is whether Patrick, in using the reference to church, possessed a discriminatory motive and intended to discriminate against Ms. Bilal because of her religion.

The trial court specifically found that Patrick was not aware that Ms. Bilal was a Muslim. The court emphasized that "Patrick *assumed* that Ms. Bilal was a Christian," the same religion with which Patrick is affiliated. It is difficult to understand how Patrick could have intentionally discriminated against Ms. Bilal because of Ms. Bilal's religion when Patrick did not even know of which religion, if any, Ms. Bilal was a member. The court's finding that Patrick assumed that Ms. Bilal was a Christian negates any discriminatory motive because it shows that Patrick had no knowledge of Ms. Bilal's religious affiliation.

*See City of Minneapolis v. Richardson,* 307 Minn. 80, 239 N.W.2d 197, 201 (1976) (instructing that the MHRA is designed to proscribe "distinction in treatment of individuals based upon impermissible or irrelevant factors such as race, color, creed, sex, etc."). Patrick did not base her decision to stop and question Ms. Bilal on the impermissible factor of religion because Patrick did not know that the impermissible factor existed; instead, Patrick based her decision on Ms. Bilal's failure to comply with the applicable dress code. Therefore, although we accept that Ms. Bilal has experienced genuine distress from what she perceived to be religious discrimination, we conclude that Ms. Bilal's religious discrimination claim must fail because Ms. Bilal has not established a discriminatory motive on the part of NWA or its employees. *Cf. Lamb v. Village of Bagley,* 310 N.W.2d 508, 511 (Minn.1981) (focusing on the defendant's discriminatory intent, not the victim's perception of being demeaned). Patrick's mistaken assumption, though perceived by Ms. Bilal to be offensive, does not constitute actionable discrimination under the MHRA.

### III.

The court of appeals affirmed the trial court's judgment in favor of Ms. Bilal, but reversed the judgment in favor of Mr. Bilal. Notwithstanding NWA's success in reversing the trial court's judgment in favor of Mr. Bilal, the court of appeals denied NWA's request for costs and attorney fees. NWA appeals the denial of its request.

Minnesota Statute section 363.14, subdivision 3 provides:

> In any action or proceeding brought pursuant to this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

---

1. Further explaining her chosen reference to "church," Patrick testified, " * * * I didn't mean it in any malicious, any kind of way other than, like I said, when I talked to her and I noticed that she was an American, a black American, it was just a metaphor that I used as one black American to another about church. I didn't mean it any other way."

2. *Cf. City of Minneapolis v. Richardson,* 307 Minn. 80, 88–89, 239 N.W.2d 197, 203 (1976) (explaining that "[w]e cannot regard use of the term 'nigger' in reference to a black youth as anything but discrimination against that youth based on his race," and holding "that use of this term by police officers coupled with all of the other uncontradicted acts described herein constituted discrimination because of race.").

"[A]n appellant prevails if he secures a reversal or modification of the order or judgment from which an appeal is taken, and the respondent prevails if he secures affirmance without modification." *Servin v. Servin,* 345 N.W.2d 754, 759 (Minn.1984). On appeal in the present case, NWA qualifies as a "prevailing party" because it secured a reversal of the trial court's judgment in favor of Mr. Bilal.

A court may in its discretion award attorney fees to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Sigurdson v. Isanti County,* 386 N.W.2d 715, 722 (Minn.1986) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). The court of appeals concluded that there is "no legal authority for damages based on a derivative discrimination claim" and the MHRA "does not authorize compensation to one whose spouse is the victim of discrimination." This finding satisfies the requirement that the plaintiff's action is without foundation. Thus, the court of appeals, in its discretion, could have granted NWA's request for attorney fees. But the court of appeals chose to deny NWA's request, and we conclude that the court of appeals was within its discretion in denying NWA's request.

We reverse both the court of appeals and the trial court and hold that Ms. Bilal's claim of religious discrimination must fail. We affirm the court of appeals' denial of NWA's request for attorney fees for reversing the trial court's judgment in favor of Mr. Bilal.

COYNE, J., took no part in the consideration or decision of this case.

TOMLJANOVICH, Justice (concurring specially).

I concur with the result reached by the majority, but write to express my concern that this matter ever reached the courts. It is important to be sensitive to racial, religious and gender differences and to avoid discrimination. However, this lawsuit defies common sense.

The majority pointed out that the word "church" does not possess the inherent derogatory qualities of an epithet. I agree. I believe that a chance remark such as the one in this case that was not motivated by any discriminatory intent should not be actionable just because it includes the word "church."

We must eliminate the use of language that diminishes another person's humanity, but this surely was not such language. How much better it would have been when Ms. Bilal was offended by Ms. Patrick's reference to church if she had sat down with Ms. Patrick and her supervisors and explained her feelings. An apology and a better understanding of the situation would, no doubt, have resulted. The courts simply cannot be the arbitrator of all hurt feelings.

It is important that we communicate our feelings to one another, but if we must live in fear that a lawsuit will result each time we make a comment or use a word that someone, somewhere, sometime might find offensive, all human exchange of words and ideas will cease, and our world will be a worse place in which to live.