# ANNE MAUREEN KILBANE AND ANOTHER v. COUNTY OF RAMSEY AND OTHERS.

193 N. W. 2d 301.

December 23, 1971—Nos. 42812, 43215.

*Thomas F. Burns & Associates,* for appellants.

*Altman, Geraghty, Leonard & Mulally* and *J. H. Geraghty,* for respondent hospital.

*Richards, Montgomery, Cobb & Bassford* and *Charles A. Bassford,* for respondent Dr. Olson.

*Scallen, Farnes, Evidon & Maurer* and *Harold E. Farnes,* for respondent Dr. Auran.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

PETERSON, JUSTICE.

Plaintiff Anne Maureen Kilbane was temporarily committed to defendant Ancker Hospital by the probate court of Ramsey County on March 1, 1963, pending the court's determination as to whether or not to commit her to a state mental hospital for treatment of recurring mental illness, the commitment proceeding having been instituted by her brother at the request of her husband, plaintiff John P. Kilbane. Ancker Hospital, an ancient facility now replaced by St. Paul Ramsey Hospital, was owned and operated by the city of St. Paul and Ramsey County. The rooms in the hospital had unshielded steam radiators. Plaintiff Mrs. Kilbane was severely burned by contact with the exposed radiator in her room in the early hours of March 6, 1963, and this action was instituted by plaintiffs against defendant hospital and individual medical and nursing personnel for their alleged causal negligence.

1. The basic issue with respect to the alleged negligence of the several individual defendants is the extent of any duty owed plaintiffs by any of them. A consideration of this issue involves the professional relationship, if any, of the individual defendants to plaintiff Mrs. Kilbane, who was committed for custody and not for medical treatment. A breach of duty by professional personnel in the employ of defendant hospital would be imputable to defendant hospital.

The events leading to Mrs. Kilbane's injury, with respect to which negligence is asserted, are not complicated. She was received into the psychiatric wing of the hospital without the medical evaluation accorded patients admitted for treatment. She was placed in a four-bed room with psychiatric patients but, when her condition deteriorated and she became threatening to patients in that room, she was transferred, upon authorization by a nondefendant physician, to a locked single-bed room with an adjoining bathroom. The defendant nurses thereafter made frequent observations of Mrs. Kilbane by looking through a window in the locked door or by opening it. A police officer was stationed outside another room across the corridor, about 4 feet from her door, but he heard no unusual sounds that would prompt him to look into the room. At some moment during the night, when she was not under immediate observation, Mrs. Kilbane came into contact with the steam radiator under circumstances understandably not known to the staff. One version, recorded in the nurse's report, was Mrs. Kilbane's statement that she became dizzy and accidentally fell against the radiator, but the other version, by Mrs. Kilbane to a medical witness, was that she intentionally sat down and leaned against the radiator.

The claimed breach of duty relates primarily to the individual defendant physicians, for there is no evidence that the defendant nurses, whose duty is measured by procedures prescribed for them, had deviated from their assigned duties. Dr. Vera Eiden, chief of the hospital's psychiatric department, with acknowledged authority over the department's medical and nursing staff, was named as a defendant but was voluntarily dismissed by plaintiffs because of her illness. Plaintiffs undertook to establish that Dr. Frances P. Olson, another named defendant, was the psychiatrist in charge of the department in the absence of Dr. Eiden, but the evidence compelled a finding that she had nothing to do with Mrs. Kilbane's custody. Although she had at one time been temporarily employed by defendant hospital, she was at that time, and had been since January 1963, employed

exclusively by the Ramsey County Mental Health Center. The center was housed on the premises of defendant hospital, but it was a completely independent activity for outpatient treatment and therapy, operating under the director of mental health of the State of Minnesota. Dr. Olson had no authority over the medical or nursing staff in defendant hospital's psychiatric department, and she had utterly no professional relationship with this plaintiff. Dr. David B. Auran, the last of the individual medical defendants, was a student at the University of Minnesota Medical School, assigned to defendant hospital to gain clinical experience. He had no authority over other hospital medical personnel and he had no relationship with plaintiff prior to her injury. Clearly, none of these physicians owed any duty to Mrs. Kilbane.

The trial court properly dismissed the actions against all these individual defendants for lack of any evidence to support a finding that any of them were negligent. The order of the trial court denying plaintiffs' motion for a new trial upon all issues as to these defendants and the judgment for defendants, from which plaintiffs appeal, are accordingly affirmed.

2. A more difficult issue arises out of the jury's answers to two questions, submitted without objection, concerning the causal negligence of defendant Ancker Hospital:

"Question No. 1: At the time and place in question was the defendant Ancker Hospital negligent in the maintenance and operation of its psychiatric department as a place of custody for a person suspected of being mentally ill and held for a sanity hearing?

"Answer: Yes.

"Question No. 2: If you answer Question No. 1 'Yes,' then was said negligence of Ancker Hospital a direct cause of plaintiffs' injuries and damages?

"Answer: No."

Plaintiffs appeal from the trial court's order denying their post-trial motions for an order changing the jury's answer to

Question No. 2 from "No" to "Yes" or for judgment notwithstanding that answer or, in the alternative, for a new trial. The issue now presented is whether the verdicts upon these two questions were clearly perverse. We conclude, from a careful examination of both the evidence and the theories of negligence argued by plaintiffs, that the verdicts of the jury were not so manifestly inconsistent as to compel a reversal of the result.

The basis of the jury's finding of negligence cannot on this record be ascertained. The jury could have found, on the one hand, that defendant hospital was negligent in the maintenance of an outmoded hospital facility and, more particularly, in having unshielded, hot radiators that presumably could result in burns to mentally ill persons in its care and custody.[1] But, on the other hand, the jury may have found, as plaintiffs themselves contend, that defendant hospital was negligent in one of several other ways in the operation of its psychiatric facility, for plaintiffs were permitted to argue the imputable negligence of defendant hospital's medical and nursing staff.

The jury's finding that defendant hospital's negligence was not a direct cause of plaintiff Mrs. Kilbane's injury must be considered in the context of plaintiffs' various theories of negligence. If the jury found, in agreement with plaintiffs, that the hospital failed in a duty either to make a psychiatric evaluation of plaintiff Mrs. Kilbane upon her arrival or at and after her confinement to a locked room, the jury could find that such failure was not the direct cause of her injury. If the jury found the hospital negligent because its nurses were not directed to make more frequent observations of plaintiff Mrs. Kilbane while alone in the locked room, the jury could have found that the injury might have occurred at any moment that she was not under observation, just as she could have been burned by an unshielded radiator in the room to which she was initially assigned. Or, if

---

[1] There was testimony, however, that it is common practice not to have shields on radiators in psychiatric rooms for hygienic reasons peculiar to psychiatric patients.

the jury found the hospital negligent in not assigning a full-time nurse to remain with Mrs. Kilbane in the locked room, it nevertheless could have found that she might have fallen against the radiator accidentally while walking to the bathroom. If the jury found that Mrs. Kilbane's injury was self-inflicted, a finding of causal relationship to any action or inaction of the hospital or its staff would be more remote, particularly in view of the medical testimony that confining her to her bed by mechanical restraint was not warranted.

The jury could have found the defendant hospital causally negligent. Elm v. St. Joseph's Hospital, 288 Minn. 538, 180 N. W. 2d 262 (1970). Our catalogue of the possible findings is intended only to illustrate the several alternatives open to the jury. We merely hold that, in view of the variety of inferences of which the facts are susceptible, causation was a fact issue for the jury's determination. Johnson v. Evanski, 221 Minn. 323, 22 N. W. 2d 213 (1946). Its finding that defendant hospital was negligent but that its negligence was not the direct cause of plaintiff Mrs. Kilbane's injury was not clearly perverse.

Affirmed.