**Donald NORBERG, et al., Appellants,**

v.

**NORTHWESTERN HOSPITAL ASSOCIATION, INC., et al., Respondents.**

**No. 47673.**

Supreme Court of Minnesota.

July 14, 1978.

Hvass, Weisman & King and Reed K. MacKenzie, Minneapolis, Erickson, Erie & Odland, Crookston, for appellants.

Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow, Fergus Falls, for respondents.

YETKA, Justice.

Appeal by plaintiffs from a judgment entered in Pennington County District Court. A jury found that defendant hospital was negligent in the care and treatment of plaintiff Donald Norberg but that the negligence was not a direct cause of the injuries he sustained. Upon denial of plaintiffs' alternative motions for judgment notwithstanding the verdict, for an amended special verdict on causation, or a new trial, appeal was made. We affirm.

On September 19, 1972, Donald Norberg came home from work acting suspiciously and believing that someone was chasing him. After a restless evening, Mr. Norberg's unusual behavior continued the next day. Later in the morning, his wife, plaintiff Lorna Norberg, and several other family members persuaded Mr. Norberg to see a physician in Karlstad, Minnesota.

After seeing the physician, Mrs. Norberg took Mr. Norberg to the psychiatric-care unit of Northwestern Hospital in Thief River Falls, Minnesota. Mr. Norberg arrived at the hospital at about 11:25 a. m. on September 20, 1972. At that time, a diagnosis of Mr. Norberg as "paranoid schizophrenic, non-violent" had been relayed to a nurse, Marlene Beedy, at Northwestern.[1] Nurse Beedy then received authorization from a staff physician to administer Thorazine orally to Mr. Norberg when he arrived.[2]

---

1. Paranoid schizophrenia or schizophrenic reaction, paranoid type, is a mental illness characterized by distortion of reality and beliefs of persecution or plots against the victim of the illness. Mr. Norberg's illness was termed "acute" in that it had appeared recently and quickly.

2. Thorazine, a major tranquilizer, is a commonly prescribed medication in the treatment of paranoid schizophrenia. It has the effect of calming a patient and reducing paranoid feelings. It may be administered orally or by injection.

Upon his arrival, Mr. Norberg was taken by nurse Beedy to an assigned room. He was apparently afraid the room was "bugged" and stayed in it only for a short time. During this time he refused the Thorazine.

After leaving his room, Mr. Norberg began to stop patients in the hall and speak to them. At noon nurse Connie Grandstrand accompanied Mr. Norberg to a lobby area and sat with him. At that time his confusion and suspiciousness were increasing. Mr. Norberg would not let nurse Grandstrand leave the lobby to attend to other patients.

At about 1 p. m. nurse Beedy returned from the lunchroom with defendant Dr. Ronald Young. Dr. Young is the Medical Director of the state's Department of Public Welfare. In 1972, he was the medical director for the psychiatric unit at Northwestern Hospital. He had apparently arrived on a regular trip to the hospital and had not come specifically to see Mr. Norberg.

Dr. Young confirmed the earlier diagnosis of acute paranoid schizophrenia. Mr. Norberg again refused to take his prescribed oral medication and finally asked his wife to leave. Mr. Norberg's agitation and restlessness continued to increase after Dr. Young's arrival. Dr. Young's attempts to calm Mr. Norberg by talking with him were in line with standard medical practice.

At about 1:45 p. m. Mr. Norberg's violence began to increase. He grabbed nurse Grandstrand and nurse Beedy or Dr. Young by their necks. Mr. Norberg then released nurse Grandstrand, and, at nurse Beedy's direction, nurse Grandstrand locked herself in a bathroom. Mr. Norberg hit Dr. Young in the face, ran up and down the hall several times, and dived through an unopened window. Mr. Norberg landed on a roof and jumped down to the next roof level. Dr. Young estimated that the time from Mr. Norberg's grabbing the nurses to his jumping out the window was 20 to 30 seconds. Nurse Grandstrand estimated the time to be as long as 1 minute. Defendants do not dispute the seriousness or permanency of Mr. Norberg's injuries or the damage awards.

From the time Dr. Young first saw Mr. Norberg until he jumped no attempt was made to apply restraints, to subdue Mr. Norberg, or to summon other assistance. Additional personnel including trained ambulance attendants were available to be called by a microphone speaker system or other means. Dr. Young testified that in his opinion calling additional personnel would have caused a violent reaction. Nurse Beedy testified that any additional personnel would have remained out of sight and that they probably would not have been able to reach Mr. Norberg. Dr. Pew, plaintiffs' expert psychiatrist, testified that additional personnel should have been alerted and have been ready to come within minutes. He further testified that in his opinion the nurses or Dr. Young could have alerted additional personnel.

The jury found the following by special verdict:

### "QUESTION NO. 1

"Was the Hospital negligent in the care and treatment of Donald Norberg on September 20, 1972, while he was a patient of the Northwestern Hospital?

ANSWER: Yes

### "QUESTION NO. 2

"INSTRUCTION: Answer the following question *only* if you answered 'Yes' to the above Question No. 1. (Do not answer Question No. 2 if your answer to Question No. 1 was 'No').

"Was such negligence on the part of the Hospital a direct cause of the injuries sustained by Donald Norberg?

ANSWER: No

### "QUESTION NO. 3

"Was Donald Norberg negligent on September 20, 1972?

ANSWER: No

\*   \*   \*   \*   \*   \*

"QUESTION NO. 6

"What sum of money would fairly and reasonably compensate Donald Norberg for his damages?

$72,000

"QUESTION NO. 7

"What sum of money would fairly and reasonably compensate Lorna Norberg for her damages?

$3,000"[3]

Plaintiffs on this appeal raise the question of whether the jury's finding that defendants were negligent in the care and treatment of Mr. Norberg required a finding that the negligence was, as a matter of law, a direct cause of his injuries.[4]

On appeal to this court the evidence and inferences to be drawn from it must be viewed in the light most favorable to the jury's verdict. *Kuehl v. National Tea Co.*, 310 Minn. 48, 245 N.W.2d 235 (1976). The general standard to be applied on review is not in dispute. In *Meurer v. Junkermeier*, 291 Minn. 318, 320, 191 N.W.2d 416, 417 (1971), this court stated:

"The question of proximate cause is for the jury to decide, and its decision will stand unless manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict. It is only where the evidence is so clear and conclusive as to leave no room for differences of opinion among reasonable men that the issue of causation becomes one of law to be decided by the court."

Plaintiffs rely upon cases such as *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (1967), which held:

" * * * The test is whether the answers [to the special verdict] can be reconciled in any reasonable manner consistent with the evidence and its fair inferences. * * *

\* \* \* \* \* \*

" * * * [W]here a jury has found negligence, it becomes our duty to hold as a matter of law that such negligence was a proximate cause of the injury where, in our opinion, reasonable men can come to no other conclusion." 277 Minn. 155, 152 N.W.2d 66.[5]

Defendants do not controvert plaintiffs' claim as to the applicable standard, but argue that this court's decision in *Kilbane v. County of Ramsey*, 292 Minn. 86, 193 N.W.2d 301 (1971), is controlling in the present case. The plaintiff in *Kilbane* was temporarily committed to Ancker Hospital pending a determination of whether to commit her to a state mental hospital. She was placed in a locked, single-bed room and was intermittently observed by hospital personnel. During the night, when she was not under observation, she came in contact with an unshielded steam radiator and suffered severe burns. A jury found that the hospital was negligent in its maintenance of its psychiatric department, but that the negligence had not caused the plaintiff's injury.

This court affirmed the judgment of the district court, stating that the findings of negligence and no causal connection were not clearly perverse. The basis for the jury's negligence finding could not be ascertained and the court determined that several possible inferences were available. It further found that on several of those theories, the jury could have found no causal connection. In effect, it was held that the jury could have found, even if the hospital had not been negligent in several ways, that the plaintiff would still have been injured. Cf., *Renne v. Gustafson*, 292 Minn. 218, 194 N.W.2d 267 (1972).

Defendants argue that the present case is analogous to *Kilbane* in that the jury could have based its finding of negligence on any of a number of possible theories, and that the jury could reasonably have found no

---

3. The jury instructions and special verdict form were discussed in chambers and approved by counsel.

4. This case does not present any issue of the proper standard of care in the treatment of mentally ill persons.

5. Plaintiffs also cite *Tauber v. Buffalo Lake Public School Dist.*, 283 Minn. 383, 168 N.W.2d 327 (1969), and *May v. Lemmon*, 287 Minn. 158, 177 N.W.2d 298 (1970).

causal connection between the negligence and the injury because the injury would have occurred even without the negligence.

Plaintiffs attempt to distinguish *Kilbane* primarily on the ground that the basis for the jury's verdict of negligence was clearly ascertainable in the present case but was not in *Kilbane*. They argue that the evidence is undisputed that Donald Norberg went through the window because of his own mental incompetence and that the jury's finding of negligence must have been based on the finding " * * * that the hospital failed to use ordinary care which would have prevented Donald Norberg's injuries."

However, plaintiffs' argument fails to distinguish between negligence as breach of duty and causal connection. The traditional elements of the negligence cause of action are duty, breach, causal connection, and damage. Prosser, Torts (4 ed.) § 30. On the standard analysis of a negligence action, the jury could have found the hospital negligent, but found that there was no cause in fact between the negligence and the injuries, i. e., the jury could have found that Mr. Norberg would have been injured even if due care had been exercised.

Plaintiffs' confusion of the issues of negligence and causation may be viewed in another way. A finding of negligence may be seen as the finding of the first premise of an argument: The hospital was negligent because it failed to use due care to prevent injuries to patients. However, in order to find liability as a conclusion to the argument, a second premise is necessary, i. e., if the hospital had used due care in this case, then Mr. Norberg's injuries would not have occurred.

Dr. Pew, plaintiffs' expert, testified that the actions of Dr. Young were up to the required standard, with the possible exception of alerting additional personnel. Thus, the jury could not have found Dr. Young negligent except insofar as he failed to alert additional personnel. The main thrust of Dr. Pew's testimony was that the hospital failed to have additional personnel available to be alerted in case of emergency. It was, however, unclear from his testimony when they should have been called.

The jury could conceivably have found other grounds of negligence as suggested by defendant: inadequate arrangement of facilities, improper discussion of commitment, inadequate training, but little or no evidence on the proper standard of care was presented on these issues.

Although the plaintiffs have the burden of proof on causation, most of the testimony on the issue was elicited by counsel for the defendants. On cross examination, Dr. Pew admitted that psychiatric patients will on occasion injure themselves despite all precautions. Nurse Beedy testified that if additional personnel had been called, they would have been positioned out of sight and probably would not have been able to reach Mr. Norberg before he jumped. Dr. Pew testified that help should have been available to be called within minutes. The jury could have found that even had they been available, the timing of events, 30 seconds to 1 minute between initial violence and ultimate injury, was too short for them to have been effective.

The trial court recognized that—

" * * * the jury could find that the plaintiff's sudden act operated to insulate the original negligence of the defendant and was an independent force producing plaintiff's injuries, and that whatever the defendants did, or did not do, or could have done, the plaintiff would still have been injured."

On the state of the record the jury could reasonably have found precisely what the trial court described.

The trial court is thus affirmed.

OTIS and TODD, JJ., took no part in the consideration or decision of this case.