# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0374
# A23-0484

Andrea Anderson,
Appellant,

vs.

Aitkin Pharmacy Services, LLC dba Thrifty White Pharmacy,
Respondent,

George Badeaux,
Respondent.

**Filed March 18, 2024**
**Affirmed in part, reversed in part, and remanded**
**Cochran, Judge**

Aitkin County District Court
File No. 01-CV-19-1198

Jess Braverman, Christy L. Hall, Gender Justice, St. Paul, Minnesota; and

Rachel A. Kitze Collins, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota (for appellant)

Ranelle Leier, Fox Rothschild LLP, Minneapolis, Minnesota (for respondent Aitkin Pharmacy Services, LLC dba Thrifty White Pharmacy)

Charles Shreffler, Shreffler Law Ltd., Lakeville, Minnesota; and

Rory T. Gray (pro hac vice), Alliance Defending Freedom, Lawrenceville, Georgia (for respondent George Badeaux)

Keith Ellison, Attorney General, Elizabeth Johnston, Rachel Bell-Munger, Assistant Attorneys General, St. Paul, Minnesota (for amicus curiae Commissioner of the Minnesota Department of Human Rights)

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Anna Veit-Carter, Assistant Attorney General, St. Paul, Minnesota (for amicus curiae Minnesota Attorney General)

Ava Marie M. Cavaco, Nigh Goldenberg Raso & Vaughn, Minneapolis, Minnesota (for amicus curiae National Women's Law Center)

Brian T. Rochel, Kitzer Rochel, PLLP, Minneapolis, Minnesota; and

Christopher J. Moreland, MJSB Employment Justice, LLP, Minneapolis, Minnesota; and

Laura A. Farley, Nichols Kaster, PLLP, Minneapolis, Minnesota (for amicus curiae Minnesota Chapter of the National Employment Lawyers Association)

Celeste E. Culberth, Leslie L. Lienemann, Culberth and Lienemann, LLP, St. Paul, Minnesota (for amicus curiae Employee Lawyers Association of the Upper Midwest)

Katherine S. Barrett Wiik, Saul Ewing LLP, Minneapolis, Minnesota; and

Amy E. Edwall, Michelina C. Lucia, Standpoint, St. Paul, Minnesota (for amicus curiae Standpoint)

James V.F. Dickey, Douglas P. Seaton, Upper Midwest Law Center, Golden Valley, Minnesota (for amicus curiae Upper Midwest Law Center)

Jason Adkins, Minnesota Catholic Conference, St. Paul, Minnesota (for amicus curiae Minnesota Catholic Conference)

Renee K. Carlson, True North Legal, St. Paul, Minnesota (for amici curiae Minnesota Family Council and True North Legal)

Considered and decided by Larson, Presiding Judge; Cochran, Judge; and Slieter, Judge.

### SYLLABUS

1.    A pharmacist engages in business discrimination within the meaning of Minnesota Statutes section 363A.17(3) (2018), when the pharmacist intentionally refuses to dispense a valid prescription for emergency contraception to a customer because the medication may interfere with a pregnancy.

2.	A district court errs by instructing a jury that the plaintiff must show a "material disadvantage" or "tangible change in conditions" to succeed on a public-accommodations claim under Minnesota Statutes section 363A.11 (2018).

**OPINION**

**COCHRAN**, Judge

A woman brought sex-discrimination claims under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.50 (2018),[1] against a pharmacy and one of its pharmacists after the pharmacist called her and informed her that he would not dispense her prescription for emergency contraception. At trial, the pharmacist asserted that he refused to dispense emergency contraception based on his conscientious objection, but neither the pharmacist nor the pharmacy asserted a constitutional defense. Following a jury verdict in favor of the defendants, the district court denied the woman's posttrial motions for judgment as a matter of law or a new trial and entered judgments for the pharmacy and the pharmacist on each of the woman's claims: business discrimination against the pharmacy and pharmacist; public-accommodations discrimination against the pharmacy; and aiding and abetting violations of the MHRA against the pharmacist.

We conclude that the district court erred in denying judgment as a matter of law on the woman's business-discrimination claim against the pharmacist. We also conclude that the district court erred in denying a new trial for the woman's public-accommodations

---

[1] The MHRA was amended during the 2023 Legislative Session. *See* 2023 Minn. Laws ch. 3, § 1, at 23; ch. 52, art. 3, § 3, at 845-47, art. 19, §§ 45-72, at 1149-62. We apply the version of the act in effect at the time of the underlying events.

claim against the pharmacy and the related aiding-and-abetting claim against the pharmacist. But we conclude that the district court did not err in denying judgment as a matter of law or a new trial on the woman's business-discrimination claim against the pharmacy. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**FACTS**

This lawsuit arises from appellant Andrea Anderson's attempt to obtain emergency-contraception medication from respondent Aitkin Pharmacy[2] and from the refusal of respondent George Badeaux—Aitkin Pharmacy's pharmacist-in-charge—to dispense that medication. The following facts are based on the evidence presented at trial, viewed in the light most favorable to the jury's verdict.

*Anderson's Attempt to Obtain Emergency Contraception*

On January 21, 2019, Anderson obtained a valid prescription for a medication called ella, a type of emergency contraception available only by prescription. The prescription was sent to Aitkin Pharmacy's store in McGregor, where Anderson lived. Anderson called the pharmacy and spoke with a pharmacy technician. The technician informed Anderson that the pharmacy did not have ella in stock, but the pharmacy would order ella to fill her prescription.

Badeaux, the pharmacist on duty on January 21, learned about Anderson's prescription for ella. Unfamiliar with ella, Badeaux reviewed its Food and Drug

---

[2] For consistency with Aitkin Pharmacy's briefing, we use "Aitkin Pharmacy" to refer to respondent Aitkin Pharmacy Services LLC dba Thrifty White Pharmacy.

4

Administration (FDA) label, which describes a medication's mechanisms of action. According to the label, ella is a medication "for prevention of pregnancy" that works by either (1) preventing the release of an egg from an ovary or (2) inhibiting the implantation of a fertilized egg into the uterus. Badeaux does not refuse to dispense medication that operates by the first mechanism. However, Badeaux refuses to dispense any emergency contraception, including ella, that works by inhibiting the implantation of a fertilized egg because doing so may cause the fertilized egg to "die," meaning a "new life will cease to exist." Badeaux considers his refusal to dispense emergency contraception to be a "conscientious objection."

Badeaux was scheduled to work the next day, January 22, when Anderson planned to pick up the prescription. Another pharmacist was also scheduled to work that day. Badeaux knew that the other pharmacist was willing to fill prescriptions for emergency contraception. But Badeaux also knew that there was a possibility of a snowstorm the next day that might make it difficult for the other pharmacist to make it to work.

Because of the weather forecast, Badeaux called Anderson to inform her of the situation. During the call, Badeaux told Anderson that the pharmacy had received her prescription for ella. He also told her that he "was not willing to participate in the dispensing of the prescription" due to "[his] beliefs." Badeaux informed Anderson that another pharmacist was scheduled to work on January 22 who was willing to dispense the prescription, but the other pharmacist might not make it in to work because of the forecasted storm. When Anderson asked what she should do, Badeaux said she could have her prescription filled at a pharmacy in Aitkin but that she might "run into trouble" at the

5

Shopko there. Anderson became angry with Badeaux and hung up before Badeaux finished discussing Anderson's options for obtaining her prescription. Badeaux did not make any changes to Aitkin Pharmacy's order for ella at that time. Nor did Badeaux tell Anderson that she could not get her prescription filled by Aitkin Pharmacy.

After her conversation with Badeaux, Anderson called other nearby pharmacies to see if she could transfer her prescription. After Anderson learned that she could not fill the prescription at CVS—the only pharmacy, other than Shopko, that she was aware of in Aitkin—Anderson called the Walgreens in Brainerd, which was located more than an hour away from her house. The Walgreens employee told her that the prescription could be ordered and would be available the next day, and Anderson transferred her prescription. Badeaux participated in the transfer of the prescription and then removed ella from Aitkin Pharmacy's order. The next day, January 22, Anderson drove to Brainerd and obtained her prescription. The other Aitkin Pharmacy pharmacist—who would have dispensed Anderson's prescription—also showed up to work on January 22.

*Aitkin Pharmacy's Plan for Dispensing Emergency Contraception*

Aitkin Pharmacy has a plan for dispensing emergency contraception to customers, which was developed in 2015 in response to Badeaux's refusal to dispense emergency contraception. Aitkin Pharmacy's owner first learned about Badeaux's refusal to dispense emergency contraception in 2015, after Badeaux refused to dispense Plan B (another type of emergency contraception) to a woman seeking the medication. Badeaux informed the woman about his beliefs about emergency contraception, and she changed her mind about obtaining the medication. The customer's mother complained to Aitkin Pharmacy's owner.

6

After the complaint, Badeaux and Aitkin Pharmacy's owner verbally agreed to a plan for dispensing emergency contraception when Badeaux was working whereby either (1) another pharmacist would come in to fill the prescription the same day or the next day or (2) the prescription would be transferred elsewhere. The owner told Badeaux that he wanted the prescriptions to be filled at Aitkin Pharmacy. He also knew that Badeaux would continue to refuse to dispense emergency contraception. The record reflects that Aitkin Pharmacy dispensed emergency contraception while Badeaux was employed as the pharmacist-in-charge.

*District Court Proceedings*

Anderson sued Aitkin Pharmacy and Badeaux under the MHRA for sex discrimination based on Badeaux's refusal to dispense her prescription and Aitkin Pharmacy's plan for dispensing emergency contraception. Anderson alleged public-accommodations discrimination, business discrimination, and aiding and abetting public-accommodations discrimination and business discrimination.[3]

Although Badeaux had refused to fill Anderson's prescription on the basis of his conscientious objection, neither Badeaux nor Aitkin Pharmacy pleaded a constitutional defense in district court. Prior to trial, Anderson filed motions in limine seeking to preclude Badeaux and Aitkin Pharmacy from presenting evidence or argument related to a constitutional defense. In response to the motions and again at the hearing regarding the

---

[3] Anderson also sued Grand St. Paul CVS LLC, CVS Health Corporation, and CVS Pharmacy Inc. in her initial complaint. The CVS defendants settled with Anderson before trial and are not parties to this appeal.

motions in limine, Badeaux disclaimed any challenge to the constitutionality of the MHRA or reliance on constitutional arguments. The district court granted Anderson's motion in limine excluding evidence and argument related to a constitutional defense.

After a five-day trial, the jury returned a special verdict finding that Anderson failed to prove: (1) that Aitkin Pharmacy denied her full and equal enjoyment in goods or services because of sex; (2) that Aitkin Pharmacy intentionally refused to do business with her because of sex; (3) that Badeaux intentionally refused to do business with her because of sex; and (4) that Badeaux intentionally aided and abetted Aitkin Pharmacy to engage in public-accommodations discrimination or business discrimination. Instructed to answer damages questions even if it found no liability, the jury also found that Anderson "is entitled to damages against [Badeaux] for emotional harm" and that $25,000 would adequately compensate her. But the jury found that Anderson did not prove that she is entitled to damages against Aitkin Pharmacy for emotional harm.

Anderson moved for judgment as a matter of law under Minnesota Rule of Civil Procedure 50.02(a) on her claim of public-accommodations discrimination against Aitkin Pharmacy, her claims of business discrimination against Badeaux and Aitkin Pharmacy, and her claim of aiding and abetting discrimination against Badeaux. She argued that the undisputed facts demonstrated that Aitkin Pharmacy and Badeaux committed sex discrimination. In the alternative, Anderson moved for a new trial under Minnesota Rule of Civil Procedure 59. Anderson alleged numerous errors, including that the verdict was not supported by the evidence, that the district court erred in instructing the jury, and that the district court erred in its evidentiary rulings related to Aitkin Pharmacy's updated

8

emergency-contraception plan and Anderson's therapy records. The district court denied Anderson's posttrial motions.

The district court then issued its findings of fact and conclusions of law determining, based on the special verdict, that (1) Aitkin Pharmacy was not liable for public-accommodations discrimination on the basis of sex under Minnesota Statutes section 363A.11; (2) Aitkin Pharmacy was not liable for business discrimination on the basis of sex under Minnesota Statutes section 363A.17; (3) Badeaux was not liable for business discrimination on the basis of sex under section 363A.17; and (4) Badeaux was not liable for aiding and abetting violations of the MHRA under section 363A.14. Because there was no finding of liability under the MHRA, the district court also concluded that Anderson was not entitled to the $25,000 award of damages. The district court entered judgment for Aitkin Pharmacy and Badeaux.

Anderson appeals.

**ISSUES**

I.     Did the district court err in denying Anderson judgment as a matter of law on her business-discrimination claim against Badeaux?

II.    Did the district court err in denying Anderson judgment as a matter of law or a new trial on her business-discrimination claim against Aitkin Pharmacy?

III.   Did the district court err in denying Anderson judgment as a matter of law or a new trial on her public-accommodations claim against Aitkin Pharmacy?

IV.    Did the district court err in denying Anderson judgment as a matter of law or a new trial on her aiding-and-abetting claim against Badeaux?

## ANALYSIS

Anderson challenges the denial of her posttrial motions for judgment as a matter of law, or in the alternative, a new trial on her MHRA claims. "We review the district court's denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to [the nonmoving party]." *Vermillion State Bank v. Tennis Sanitation, LLC*, 969 N.W.2d 610, 618 (Minn. 2022). "We affirm the denial of a motion for judgment as a matter of law unless no reasonable theory supports the verdict," which "means that to reverse, the evidence must be so overwhelming on one side that reasonable minds cannot differ as to the proper outcome." *Id.* at 618-19 (quotations omitted).

We review the district court's denial of a motion for a new trial for an abuse of discretion. *Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018). "A district court may grant a new trial for '[e]rrors of law occurring at the trial' or when '[t]he verdict . . . is not justified by the evidence, or is contrary to law.'" *Id.* (alterations in original) (quoting Minn. R. Civ. P. 59.01). When considering whether the evidence justifies the verdict, we consider "whether the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence, or acted under some mistake." *Clifford v. Geritom Med, Inc.*, 681 N.W.2d 680, 687 (Minn. 2004) (quotation omitted). "This is a demanding standard, but it is less rigorous than the standard for granting [judgment as a matter of law]." *Id.*

The purpose of the MHRA is "to secure for persons in this state, freedom from discrimination." Minn. Stat. § 363A.02, subd. 1. In furtherance of this purpose, the MHRA provides for civil liability when a defendant engages in an "unfair discriminatory practice."

*See* Minn. Stat. §§ 363A.08-.19, .33; *see also* Minn. Stat. § 363A.03, subd. 48 (defining "[u]nfair discriminatory practice" for purposes of the MHRA). As relevant to this appeal, the MHRA prohibits: (1) business discrimination, defined as "to intentionally refuse to do business with [a person] . . . because of a person's . . . sex . . . unless the alleged refusal or discrimination is because of a legitimate business purpose," Minn. Stat. § 363A.17(3); (2) public-accommodations discrimination, defined as "to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of . . . sex," Minn. Stat. § 363A.11, subd. 1(a)(1); and (3) aiding and abetting, defined as "intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by [the MHRA]," Minn. Stat. § 363A.14(1).

To the extent that Anderson's arguments require this court to interpret the MHRA, "[c]onstruction of the [MHRA's] provisions is an issue of statutory interpretation which we review de novo." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 68 (Minn. 2020). "The provisions of [the MHRA] shall be construed liberally for the accomplishment of the purposes thereof." Minn. Stat. § 363A.04.

On appeal, Anderson argues that she is entitled to judgment in her favor or a new trial on each of her claims—business discrimination against Badeaux, business discrimination against Aitkin Pharmacy, public-accommodations discrimination against Aitkin Pharmacy, and aiding and abetting business discrimination and public-accommodations discrimination against Badeaux. We address each claim in turn.

11

## I.      Business-Discrimination Claim Against Badeaux

Anderson argues that she is entitled to judgment as a matter of law on her business-discrimination claim against Badeaux because of the undisputed evidence that Badeaux refused to dispense her prescription for ella. We conclude that the district court erred by denying Anderson judgment as a matter of law on this claim.[4]

The business-discrimination provision of the MHRA provides that, "for a person engaged in a trade or business or in the provision of a service," it is an unfair discriminatory practice "[1] to intentionally refuse to do business with [a person] . . . [2] because of a person's . . . sex . . . [3] unless the alleged refusal or discrimination is because of a legitimate business purpose." Minn. Stat. § 363A.17(3). The jury did not find, and Badeaux does not argue, that he had a legitimate business purpose for the challenged conduct. Accordingly, Anderson must prove that Badeaux "intentionally refuse[d] to do business with" Anderson and that refusal was "because of" Anderson's sex.

### A.      Badeaux intentionally refused to do business with Anderson by refusing to dispense her prescription for ella.

To determine whether the district court erred when it denied Anderson's motion for judgment as a matter of law on this claim, we first assess whether the evidence, viewed in the light most favorable to the verdict, supports a reasonable theory of the evidence that Badeaux did not intentionally refuse to do business with Anderson. *See Vermillion State*

---

[4] Anderson argues in the alternative that she is entitled to a new trial based on the evidence, erroneous jury instructions, and certain evidentiary rulings. Because we conclude that Anderson is entitled to judgment as a matter of law, we do not reach her other assignments of error in relation to this claim.

*Bank*, 969 N.W.2d at 618-19. Anderson argues, and the undisputed evidence at trial establishes, that Badeaux informed Anderson that he was not willing to dispense Anderson's prescription for ella. Badeaux argues that the evidence shows that he did not intentionally refuse to do business with Anderson because his "conscientious objection did not affect Anderson's opportunity to do business with [Aitkin Pharmacy]." We conclude that the sole reasonable theory of the evidence is that Badeaux intentionally refused to do business with Anderson.

We begin our analysis by examining the undisputed evidence. At trial, Badeaux testified that he informed Anderson that he was unwilling to dispense her prescription for ella to her. He also testified that he was sincere in his refusal to dispense the prescription. Badeaux does not dispute that the business-discrimination provision, which applies to "a person engaged in a trade or business," governs his conduct as the pharmacist-in-charge at Aitkin Pharmacy. *See* Minn. Stat. § 363A.17. Accordingly, neither Badeaux's willingness to have another Aitkin Pharmacy pharmacist dispense Anderson's prescription nor his willingness to transfer Anderson's prescription to a different pharmacy negate the undisputed evidence that Badeaux informed Anderson that he was unwilling to dispense her prescription for ella to her. As a result, reasonable minds cannot disagree that Badeaux intentionally refused to do business with Anderson by informing her that he was unwilling to dispense her prescription for ella.

13

**B.** **Badeaux's refusal to dispense emergency contraception because it may interfere with a pregnancy is sex discrimination.**

Because we conclude that the evidence establishes that Badeaux "intentionally refuse[d] to do business with" Anderson within the meaning of section 363A.17(3), we now turn to the crux of the parties' dispute: whether Badeaux's refusal to dispense ella to Anderson is sex discrimination under the MHRA.

The MHRA defines "sex" as follows: "'Sex' includes, but is not limited to, pregnancy, childbirth, and disabilities related to pregnancy or childbirth." Minn. Stat. § 363A.03, subd. 42. Accordingly, pregnancy discrimination is sex discrimination under the MHRA. *Id.*; *see, e.g.*, *Minn. Mining & Mfg. Co. v. State*, 289 N.W.2d 396, 397 (Minn. 1979) (*3M*) (holding that "the exclusion of pregnancy-related absences from an otherwise comprehensive income maintenance plan is per se sex discrimination within the meaning of the Minnesota Human Rights Act"). A plaintiff proves her disparate-treatment claim under the MHRA if she shows that the protected trait "actually motivated" the challenged decision. *LaPoint v. Fam. Orthodontics, P.A.*, 892 N.W.2d 506, 514 (Minn. 2017) (quotation omitted).[5] With regard to pregnancy, a plaintiff satisfies this requirement

---

[5] We note that *LaPoint* arises under the MHRA's employment provision, not the business-discrimination provision. 892 N.W.2d at 513. But because the operative language regarding protected traits is consistent across the MHRA's provisions, *LaPoint* controls our analysis here. *See* Minn. Stat. §§ 363A.08 ("because of . . . sex"), .11 (same), .17 ("because of a person's . . . sex"); *see also LaPoint*, 892 N.W.2d at 507 (syllabus of the court) ("A plaintiff asserting a pregnancy discrimination claim under the Minnesota Human Rights Act under a disparate-treatment theory proves her claim if she shows that pregnancy 'actually motivated' the challenged decision."). And, as discussed further below, we likewise look to federal employment-discrimination caselaw arising under Title VII of the Civil Rights Act of 1964. *See Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 880 (Minn. 2023) ("In construing the Human Rights Act, we look to both Minnesota case law

if she can demonstrate that pregnancy was "a substantial causative factor" motivating the challenged conduct. *Id.* (quotation omitted).

We conclude that the evidence at trial unequivocally demonstrates that Badeaux's refusal to dispense ella was "actually motivated" by pregnancy. *See id.* The undisputed evidence is that Badeaux refuses to dispense any emergency-contraception medication that may interfere with a fertilized egg, including ella. Badeaux testified that he believes each fertilized egg is a "new life." And, he testified that he "do[es] not want to participate in anything that might cause a fertilized egg to die." In other words, as he explains in his briefing, "Badeaux's reason for not dispensing ella is clear: he does not wish to participate in the death of a brand new human life." Badeaux's refusal to dispense emergency contraception is therefore based on the possibility that the person taking the medication may be pregnant. Accordingly, as Anderson argues, Badeaux refused to dispense Anderson's valid prescription because Badeaux believed she may have been pregnant. Thus, pregnancy was a substantial causative factor in Badeaux's refusal to dispense ella.

Badeaux does not identify a reason for declining to dispense the medication to Anderson other than pregnancy. Badeaux's contrary assertion that he was motivated by the possibility that the medication might interfere with a pregnancy, not because Anderson was pregnant, is a distinction without a difference. It is not logically possible to separate Badeaux's stated reason for refusing to dispense ella from Anderson's potential pregnancy. Concern about interfering with a potential pregnancy is necessarily a concern about

---

and federal case law arising under similar federal statutes . . . ."); 42 U.S.C. § 2000e-2(a) (2018) (prohibiting discrimination in employment "because of such individual's . . . sex").

pregnancy. In other words, pregnancy was "a substantial causative factor" in Badeaux's decision to refuse to dispense ella to Anderson. *See id.* at 514 (quotation omitted). Badeaux's framing of his motivation does not change that pregnancy "actually motivated" his refusal to dispense ella to Anderson. *See id.* (quotation omitted).

We are not persuaded otherwise by Badeaux's argument that he cannot have discriminated against Anderson because his goal—protecting unborn life—is not based on prejudice against women. In *LaPoint*, the supreme court held that "[a] plaintiff asserting a pregnancy discrimination claim under the [MHRA] under a disparate-treatment theory proves her claim if she shows that pregnancy 'actually motivated' the challenged decision." *Id.* at 507 (syllabus of the court). And the supreme court underscored that the plaintiff "was not required to prove that [the defendant's owner] was hostile to [the plaintiff's] pregnancy in order for her to prevail." *Id.* at 517. Because animus, in the sense of dislike or hostility, is not necessary for a protected characteristic to motivate a decision, *id.*, Badeaux's lack of hostility to pregnancy or Anderson does not alter that he was actually motivated by pregnancy when he refused to dispense Anderson's prescription.[6]

Our conclusion that Badeaux's refusal to dispense emergency contraception is sex discrimination under the MHRA is reinforced by federal caselaw. In construing the MHRA, our supreme court has looked to federal caselaw interpreting similar statutes involving sex discrimination, including Title VII of the 1964 Civil Rights Act. *Henry*,

---

[6] We emphasize that our decision is limited to the narrow legal question before us— whether pregnancy, a protected trait under the MHRA, "actually motivated" Badeaux's conduct. *See LaPoint*, 892 N.W.2d at 514. We do not express any opinion about Badeaux's personal beliefs.

988 N.W.2d at 880. "Federal case law, however, does not bind Minnesota courts in the application of the [MHRA]." *Id.* (quotation omitted). "Historically, the [MHRA] has provided more expansive protections to Minnesotans than federal law." *Id.* (quotation omitted).

Relevant to the sex-discrimination issue before us, the United States Supreme Court has explained that liability under Title VII, which prohibits sex discrimination in employment, does not "turn[] on the employer's labels or any further intentions (or motivations) for its conduct beyond sex discrimination." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1745-46 (2020). Thus, an employer's decision to implement a fetal-protection policy and exclude all female employees "who are pregnant or who are capable of bearing children" from positions that involved lead exposure was unlawful sex discrimination, even though the policy was intended to protect fetuses (or potential fetuses), not discriminate against female employees. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 190, 192, 197, 199, 211 (1991) (noting that "[c]oncern for a woman's existing or potential offspring historically has been the excuse for denying women equal employment opportunities").

Badeaux argues that *Bostock* and *Johnson Controls* should not govern our analysis and instead directs this court to *In re Union Pacific Railroad Employment Practices Litigation*, 479 F.3d 936 (8th Cir. 2007). Badeaux argues that, under *Union Pacific*, refusing to dispense emergency contraception cannot be sex or pregnancy discrimination. But *Union Pacific* is persuasive to show that Badeaux's refusal to dispense emergency

17

contraception is motivated by pregnancy. In that case, the United States Court of Appeals for the Eighth Circuit considered an argument that an employee health-insurance plan qualified as pregnancy discrimination under Title VII, as amended by the Pregnancy Discrimination Act (PDA), because the plan excluded contraception from coverage. *Union Pacific*, 479 F.3d at 938-39. The Eighth Circuit explained that "[c]ontraception, like infertility treatments, is a treatment that is only indicated prior to pregnancy," and the plan excluded all contraception, whether for men or women. *Id.* at 943. The Eighth Circuit therefore held that the exclusion of contraception was not pregnancy discrimination within the meaning of the PDA. *Id.* Here, by contrast, Badeaux's refusal to dispense ella and other emergency contraception is explicitly motivated by his desire to not interfere with pregnancy. Accordingly, both the United States Supreme Court's Title VII caselaw and *Union Pacific* are consistent with our conclusion that Badeaux's refusal to dispense ella is sex discrimination under section 363A.17 of the MHRA.[7]

---

[7] Badeaux argues that our analysis should follow the federal caselaw considering pregnancy and abortion under the Equal Protection Clause. Because we are concerned with whether pregnancy "actually motivated" the challenged conduct, not whether the challenged conduct is the product of animus against women, those cases are neither relevant nor instructive. *See, e.g.*, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022) (explaining that "the goal of preventing abortion does not constitute invidiously discriminatory animus against women" such that abortion restrictions are a sex-based classification under the Equal Protection Clause (quotation omitted)). We also note that the reasoning in this line of caselaw has been rejected by Minnesota courts interpreting the MHRA. *Compare 3M*, 289 N.W.2d at 397 ("Excluding only pregnancy-related disabilities from an otherwise comprehensive income maintenance plan is per se sex discrimination.") *with Geduldig v. Aiello*, 417 U.S. 484, 497 (1974) (holding that the exclusion of pregnancy-related disabilities from a state disability-benefits scheme is not sex discrimination), *superseded by statute*, 42 U.S.C. § 2000e(k) (Supp. V 1981).

18

Finally, Badeaux argues that interpreting the MHRA as we do is inconsistent with the doctrine of constitutional avoidance. As an initial matter, we clarify what Badeaux does not argue. Badeaux did not assert a constitutional defense in district court and does not argue that the MHRA actually violates his constitutional rights. Instead, he argues on appeal that the sex-discrimination language in the MHRA should be interpreted to avoid a constitutional conflict. And he contends that interpreting the MHRA to define sex discrimination as including the refusal to dispense emergency contraception that may interfere with a pregnancy poses a potential conflict with article I, section 16 of the Minnesota Constitution and the First Amendment of the United States Constitution. These provisions protect an individual's right to freely exercise their religion without government interference. U.S. Const. amend. I; Minn. Const. art. I, § 16. Badeaux's argument is unavailing.

"The constitutional-avoidance canon provides a presumption . . . that a statute is constitutional, and we are required to place a construction on the statute that will find it so *if at all possible*." *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 232 (Minn. 2014) (quotation omitted). But we do not apply the constitutional-avoidance canon to a party's proposed interpretation of a statute if the interpretation is contrary to the plain language of the statute. *See id.*; *see also State v. Fugalli*, 967 N.W.2d 74, 79-80 (Minn. 2021) ("We do not apply constitutional avoidance statutory interpretation principles when, as here, we have found a statute to be unambiguous."). In other words, it is not "possible" to adopt an interpretation of a statute that is contrary to its plain language. *See Leiendecker*, 848 N.W.2d at 232-33(quotation omitted). Yet that is in essence what Badeaux is asking

19

this court to do.  Badeaux asks us to read a statutory exemption into the MHRA for a person who refuses to do business with others based on the person's beliefs about pregnancy and when a new life begins.  Because the plain language of the MHRA does not support such an exemption, we decline Badeaux's invitation to interpret the MHRA in this manner.

The MHRA contains a statutory exemption based on religious beliefs, but it is not the exemption that Badeaux suggests we should adopt.  The legislature has exempted nonprofit religious associations (and educational institutions organized by such religious associations) from the application of the MHRA "with respect to the provision of goods, services, facilities, or accommodations directly related to the solemnization or celebration of a civil marriage that is in violation of its religious beliefs."  Minn. Stat. § 363A.26(3).  Thus, the legislature has created a narrow exception from liability under the MHRA for certain religious entities that refuse to provide goods or services "directly related" to a specific type of conduct—marriage in violation of the entities' religious beliefs.  The legislature has not, however, included a corresponding religious exemption from the application of the MHRA for people or entities who refuse to dispense emergency contraception.  *See* Minn. Stat. §§ 363A.20-.26 (providing exemptions from the MHRA).  "When the Legislature uses limiting or modifying language in one part of a statute, but omits it in another, we regard that omission as intentional and will not add those same words of limitation or modification to parts of the statute where they were not used."  *Gen. Mills, Inc. v. Comm'r of Rev.*, 931 N.W.2d 791, 800 (Minn. 2019); *see also* Minn. Stat. § 645.19 (2022) ("Exceptions expressed in a law shall be construed to exclude all others.").  Accordingly, we cannot interpret the MHRA's scope to exclude dispensing a valid

20

prescription for emergency contraception, regardless of whether the provision of such medication violates a person's religious beliefs.

The potential for conflict between the mandates of an anti-discrimination law and an individual's religious beliefs or conscience is not unique to this case.[8] But conduct may violate the MHRA even if it is constitutionally protected. Under those circumstances, a person may seek a constitutional exemption from the application of an anti-discrimination law by showing that the statute's enforcement infringes upon the individual's constitutional rights. *See, e.g.*, *State by Cooper v. French*, 460 N.W.2d 2, 8-11 (Minn. 1990) (Yetka, J., plurality) (concluding that a landlord was entitled to a constitutional exemption from the MHRA); *Rasmussen v. Glass*, 498 N.W.2d 508, 516 (Minn. App. 1993) (holding that, "even if [relator's] conduct did constitute a violation of the Minneapolis Civil Rights Ordinance, such conduct is protected under article I, section 16 of the Minnesota

---

[8] For example, in *State by McClure v. Sports & Health Club, Inc.*, the Minnesota Supreme Court held that an employer, a secular fitness club, was liable for employment discrimination under the MHRA even though the MHRA "as applied [in that case] infringe[d] upon sincerely held religious beliefs and impose[d] upon the free exercise thereof" because of "[t]he state's overriding compelling interest of eliminating discrimination based upon sex, race, marital status, or religion." 370 N.W.2d 844, 853 (Minn. 1985), *appeal dismissed*, 478 U.S. 1015 (1986). And, as discussed above, in recognition of the potential conflict between anti-discrimination laws and the beliefs of churches and other religious organizations, the legislature has created narrow exemptions for religious associations and associated educational institutions from the application of the MHRA. *See* Minn. Stat. § 363A.26. The United States Supreme Court has similarly recognized an affirmative defense, the "ministerial exception," to claims of employment discrimination against religious organizations based on decisions regarding ministerial— but not non-ministerial—employees. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188, 195 n.4 (2012); *see also Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2055, 2066 (2020) (holding that the ministerial exception barred two Catholic teachers' employment-discrimination claims).

Constitution"), *rev. granted* (Minn. June 9, 1993), *appeal dismissed*, (Minn. July 14, 1993).

Because Badeaux does not argue that the MHRA violates his constitutional rights and did

not raise a constitutional defense in district court, we do not consider Badeaux's potential

entitlement to a constitutional exemption.[9] *Cf. Leiendecker*, 848 N.W.2d at 232 (declining

to address statutes' constitutionality when respondents "disclaim[ed] any argument that the

[disputed] statutes *actually* violate their jury-trial right" and neither the petition for review

nor respondents' petition for cross-review raised such a claim).

In sum, even viewing the evidence in the light most favorable to Badeaux,

reasonable minds cannot disagree that Badeaux's refusal to dispense ella to Anderson was

"actually motivated" by her potential pregnancy. *See Vermillion State Bank*, 969 N.W.2d

at 618-19; *LaPoint*, 892 N.W.2d at 514 (quotation omitted). As a result, Anderson

established that Badeaux intentionally refused to do business with her because of her sex

---

[9] When a person invokes constitutional protections from the application of a statute on religious grounds, Minnesota courts utilize a four-prong test to determine whether the person is entitled to a state constitutional exemption: "[1] whether the objector's belief is sincerely held; [2] whether the state regulation burdens the exercise of religious beliefs; [3] whether the state interest in the regulation is overriding or compelling; and [4] whether the state regulation uses the least restrictive means." *Hill-Murray Fed'n of Tchrs. v. Hill-Murray High Sch.*, 487 N.W.2d 857, 865 (Minn. 1992); *see also McClure*, 370 N.W.2d at 853. Neither the parties nor the district court considered this test, and thus the record on the four prongs was not developed in district court. As such, the district court did not address the question of whether Badeaux could satisfy the four-prong test for a constitutional exemption. Therefore, while Badeaux may have had a valid state constitutional defense, the issue is not properly before this court, and we express no opinion as to whether such a defense would have been successful. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." (quotation omitted)). Similarly, we decline to consider Badeaux's letter filed after oral argument pursuant to rule 128.05 of the Minnesota Rules of Civil Appellate Procedure because it presents a new argument and therefore fails to comply with the rule.

in violation of Minnesota Statutes section 363A.17(3). We therefore reverse the district court's denial of judgment as a matter of law on this claim.[10]

## II. Business-Discrimination Claim Against Aitkin Pharmacy

We next consider Anderson's argument that the district court erred when it concluded that she is not entitled to judgment as a matter of law on her business-discrimination claim against Aitkin Pharmacy. In the alternative, Anderson argues that the district court should have granted a new trial on this business-discrimination claim. As with her business-discrimination claim against Badeaux, Anderson's claim required her to prove that Aitkin Pharmacy intentionally refused to do business with her because of her sex. Minn. Stat. § 363A.17(3); *see also* Minn. Stat. § 363A.03, subd. 30 (defining "[p]erson" to include a corporation or association). We first address Anderson's argument regarding judgment as a matter of law before addressing her arguments in support of a new trial.

### A. There is a reasonable theory of the evidence that supports the jury verdict on Anderson's business-discrimination claim against Aitkin Pharmacy.

Anderson argues that she is entitled to judgment as a matter of law because Aitkin Pharmacy intentionally refused to do business with her within the meaning of section 363A.17(3) by implementing a plan for dispensing emergency contraception that allowed Badeaux to refuse to fill Anderson's prescription for ella. We are not persuaded.

---

[10] We clarify that the jury's finding of $25,000 is not tied to Badeaux's liability for business discrimination or Anderson's other discrimination claims. As a result, that finding does not support the entry of judgment of $25,000 against Badeaux. Instead, Anderson is entitled to a trial regarding compensatory damages related to this claim.

Viewed in the light most favorable to the verdict, we conclude that there is adequate evidence to show that Aitkin Pharmacy did not refuse to do business with Anderson and therefore to sustain the jury's verdict on this claim. *See Vermillion State Bank*, 969 N.W.2d at 618-19. The evidence shows that Aitkin Pharmacy wanted to fill all valid prescriptions and had a pharmacist on staff who was willing to dispense emergency contraception. The evidence also shows that, when Badeaux called Anderson on January 21, he communicated both that he was unwilling to dispense ella and that there was another pharmacist scheduled to work who was willing to dispense her prescription. The record also reflects that Anderson, not Badeaux, ended the phone call. And it is undisputed that the other pharmacist was working and available to dispense Anderson's prescription on January 22, but that Anderson decided to transfer her prescription for ella to another pharmacy. Because the record shows that Aitkin Pharmacy was willing and able to dispense ella to Anderson, we conclude that there is a reasonable theory of the evidence to support the verdict that Aitkin Pharmacy did not intentionally refuse to do business with Anderson within the meaning of section 363A.17(3).

Anderson asserts that "Badeaux's actions were taken on behalf of [Aitkin Pharmacy] and in full accordance with [Aitkin Pharmacy's] policy" and thus "a refusal by [Badeaux] is a refusal by [Aitkin Pharmacy]."[11] We disagree. Under Aitkin Pharmacy's

---

[11] To the extent that Anderson argues that this court should adopt a theory of strict liability—that is, that Badeaux's refusal to do business with Anderson necessarily means that Aitkin Pharmacy is liable—we decline to do so. Anderson does not cite authority to support the assertion that a business is strictly liable for business discrimination if one of its employees engages in business discrimination, and Minnesota courts have previously rejected the application of strict liability for MHRA claims. *See, e.g.*, *Frieler v. Carlson*

24

plan, another Aitkin Pharmacy pharmacist would fill the prescription that day or the following day, or Badeaux would transfer the prescription to another pharmacy at the customer's request. The plan did not require Badeaux or other Aitkin Pharmacy pharmacists to refuse to dispense emergency contraception. Nor did the plan require Badeaux to call Anderson and inform her that he would not dispense her prescription. The record reflects that Badeaux contacted Anderson because of the possibility of the snowstorm—not because contact was required by the plan. As a result, there is a reasonable theory of the evidence that, even though Badeaux refused to dispense ella to Anderson, Aitkin Pharmacy did not refuse to dispense that prescription and would have dispensed it if Anderson had not transferred her prescription. The district court therefore did not err by denying Anderson judgment as a matter of law on this claim.[12] *See id.*

**B.     The district court did not abuse its discretion in denying Anderson a new trial based on the jury instructions defining "intentionally."**

We next turn to Anderson's argument that she is entitled to a new trial on her business-discrimination claim because the district court erred in instructing the jury on the meaning of "intentionally" as used in section 363A.17(3). "We review the denial of a

---

*Mktg. Grp., Inc.*, 751 N.W.2d 558, 567-68 (Minn. 2008) (sexual harassment in employment); *Brisson v. State*, 994 N.W.2d 920, 927 (Minn. App. 2023) (sexual harassment in public services), *rev. granted* (Nov. 28, 2023).

[12] Anderson also asserts, under a similar theory, that the evidence related to Aitkin Pharmacy's emergency-contraception plan entitles her to a new trial. For the reasons outlined above, we discern no abuse of discretion in the district court's determination that there was sufficient evidence to justify the jury's verdict. *See Clifford*, 681 N.W.2d at 687 ("A district court is in a better position than an appellate court to assess whether the evidence justifies the verdict and we usually defer to that court's exercise of the authority to grant a new trial.").

motion for a new trial based on an erroneous jury instruction for an abuse of discretion." *Vermillion State Bank*, 969 N.W.2d at 619. Therefore, "we will not reverse where jury instructions overall fairly and correctly state the applicable law." *Id.* at 629 (quotation omitted). "But a new trial is required if the jury instruction was erroneous and such error was prejudicial to the objecting party or if the instruction was erroneous and its effect cannot be determined." *Christie*, 911 N.W.2d at 838 (quotation omitted). "A jury instruction is erroneous if, when read as a whole, the instruction materially misstates the law, or is apt to confuse and mislead the jury." *Domagala v. Rolland*, 805 N.W.2d 14, 29 (Minn. 2011) (quotation and citations omitted). We conclude that Anderson has not shown that the challenged jury instruction is erroneous.

The business-discrimination provision at issue requires a plaintiff to show that the defendant "intentionally refuse[d] to do business." Minn. Stat. § 363A.17(3). The MHRA does not define "intentionally." *See id.*; Minn. Stat. § 363A.03. The district court instructed the jury that, for purposes of the business-discrimination claim, the phrase "intentionally" means "a person: (a) wants to cause the consequences of his or her acts, or (b) knows that his or her acts are substantially certain to cause those consequences."

Anderson argues that this instruction erroneously relies on the definition of intent from the Restatement (Second) of Torts section 8A. She contends that the instruction is improper because the MHRA does not require "the actor to intend both the act itself and the consequences of the act." Citing *LaPoint*, she argues that the MHRA only requires a plaintiff to show "that there is a link between the protected class and the action alleged to be discriminatory." We are unpersuaded.

26

In *LaPoint*, as discussed above, the supreme court considered the standard to establish that the challenged conduct—employment discrimination with respect to hiring—was because of the plaintiff's pregnancy. 892 N.W.2d at 514. The supreme court explained that the plaintiff would succeed on her MHRA employment-discrimination claim if she showed her pregnancy "actually motivated," or "was a substantial causative factor in," the employer's decision not to hire her. *Id.* (quotations omitted). But the MHRA employment provision, unlike the MHRA business-discrimination provision, does not require that an employer must "intentionally" discriminate with respect to hiring. *Compare* Minn. Stat. § 363A.08, subd. 2(3), *with* Minn. Stat. § 363A.17(3). As a result, the supreme court's analysis in *LaPoint* does not address what the term "intentionally" means for the business-discrimination provision at issue here.

Because Anderson has not identified binding caselaw interpreting "intentionally" in the context of the MHRA business-discrimination provision, we turn to other established methods of statutory interpretation to determine whether the district court's definition of "intent" or "intentionally" misstated the law. This court has previously relied on the Restatement (Second) of Torts when interpreting the MHRA. *See Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 830 (Minn. App. 2011) (concluding that the legal standard from the Restatement (Second) of Torts applies to aiding-and-abetting claims under the MHRA). And Anderson does not identify a material difference between the Restatement's definition of "intent" and dictionary definitions of "intentional," which include "[d]one deliberately" or "intended." *The American Heritage Dictionary of the English Language* 912 (5th ed. 2011). As a result, Anderson has not established that the district court's use

27

of the definition of "intentionally" from the Restatement (Second) of Torts materially misstated the law. *See Domagala*, 805 N.W.2d at 29. We therefore discern no abuse of discretion in the district court's denial of a new trial for the business-discrimination claim against Aitkin Pharmacy on this basis. *See Vermillion State Bank*, 969 N.W.2d at 629 ("[W]e will not reverse where jury instructions overall fairly and correctly state the applicable law." (quotation omitted)).

**C.    The district court did not abuse its discretion in denying Anderson a new trial based on evidentiary rulings.**

Anderson's final argument related to a new trial for her business-discrimination claim against Aitkin Pharmacy challenges two evidentiary rulings—(1) the district court's exclusion of a February 2019 email discussing Aitkin Pharmacy's revised plan regarding the dispensing of emergency contraception, and (2) the admission of her therapy records. "Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." *Kedrowski v. Lycoming Engines*, 933 N.W.2d 45, 62 (Minn. 2019) (quotation omitted). "We afford the district court broad discretion when ruling on evidentiary matters, and we will not reverse the district court absent an abuse of that discretion." *Doe 136 v. Liebsch*, 872 N.W.2d 875, 879 (Minn. 2015). Because we conclude that Anderson has not demonstrated prejudice related to her business-discrimination claim against Aitkin Pharmacy based on these evidentiary rulings, we conclude that the district court did not abuse its discretion in denying a new trial for this claim on these grounds.

Anderson first challenges the district court's exclusion of a February 2019 email discussing Aitkin Pharmacy's plan for dispensing emergency contraception. She argues that the 2019 email establishes the viability of alternative plans for dealing with prescriptions for emergency contraception, which she asserts is relevant to whether Aitkin Pharmacy had a legitimate business purpose for allowing Badeaux to refuse to dispense prescriptions. But the jury did not reach whether Aitkin Pharmacy had a legitimate business purpose for allowing Badeaux to refuse to dispense prescriptions because the jury found that Aitkin Pharmacy did not intentionally refuse to do business with her because of her sex. And, given the undisputed evidence that Aitkin Pharmacy was willing to dispense Anderson's prescription to her, we are unpersuaded that additional evidence regarding the scope of the plan would have affected the jury's assessment of the business-discrimination claim against Aitkin Pharmacy.

Anderson also challenges the admission of her therapy records. The therapy records were relevant to damages, but Anderson does not explain how the therapy records affected her ability to prove that Aitkin Pharmacy intentionally refused to do business with her because of her sex. Accordingly, we conclude that the admission of the therapy records did not prejudice Anderson's business-discrimination claim.

In sum, Anderson has not demonstrated that she is entitled to judgment as a matter of law on her business-discrimination claim against Aitkin Pharmacy or that the district court abused its discretion in denying a new trial. Accordingly, we affirm the judgment in Aitkin Pharmacy's favor on that claim.

**III.    Public-Accommodations Claim Against Aitkin Pharmacy**

Anderson argues that she is entitled to judgment as a matter of law or, in the alternative, a new trial on her public-accommodations claim based on erroneous jury instructions and erroneous evidentiary rulings.  Because it is undisputed that Aitkin Pharmacy is a place of public accommodation, Anderson's claim against Aitkin Pharmacy requires her to prove that she was "den[ied] . . . the full and equal enjoyment of [Aitkin Pharmacy's] goods, services, facilities, privileges, advantages, and accommodations" and that denial was "because of . . . sex."  Minn. Stat. § 363A.11, subd. 1(a)(1).  We address Anderson's arguments in support of judgment as a matter of law and then her arguments in support of a new trial.

**A.    There is a reasonable theory of the evidence that supports the jury's verdict that Aitkin Pharmacy did not deny Anderson full and equal enjoyment of its goods and services.**

Anderson argues that the district court erred when it concluded that she is not entitled to judgment as a matter of law on her public-accommodations claim.  She contends that, because Aitkin Pharmacy maintained a store "policy" that allowed Badeaux to refuse to dispense prescriptions and because Badeaux informed her that he was unwilling to dispense her prescription for ella, she is entitled to judgment on her public-accommodations claim.  Aitkin Pharmacy responds that Anderson received the same options as any other customer who had a prescription that the pharmacy did not have in stock—having the prescription filled when it was in stock at the pharmacy the following day or transferring to another pharmacy of the patient's choosing.  We conclude that Anderson has not demonstrated that the district court erred when it denied her judgment on

30

this claim because, viewing the evidence in the light most favorable to Aitkin Pharmacy, there is a reasonable theory of the evidence upon which the jury could have concluded that Anderson was not denied full and equal enjoyment of Aitkin Pharmacy's goods and services. *See Vermillion State Bank*, 969 N.W.2d at 618-19.

The jury heard evidence that Aitkin Pharmacy ordered Anderson's prescription for ella, that Badeaux did not delete ella from Aitkin Pharmacy's order until Anderson decided to transfer the prescription elsewhere, and that an Aitkin Pharmacy pharmacist who was willing to dispense her prescription was on duty when the prescription would have arrived at the store the next day. There was also evidence that Badeaux called Anderson because of the forecasted snowstorm to discuss her options for obtaining her prescription the next day. Badeaux did express to Anderson that he would not dispense the prescription because of "[his] beliefs," but he also told her that another pharmacist, who was scheduled to work with Badeaux the next day, was willing to dispense the medication. And Badeaux did not tell Anderson that she was acting wrongfully or immorally in obtaining her prescription. Given this evidence, the jury could have reasonably believed that Anderson was not denied full and equal enjoyment of Aitkin Pharmacy's goods and services because she would have obtained her prescription from Aitkin Pharmacy on January 22—the same day that she obtained her prescription from the other pharmacy—if she had not decided to transfer her prescription.

We are not persuaded otherwise by Anderson's argument that the jury's verdict in her favor on damages attributable to Badeaux shows that Anderson was denied full and equal enjoyment of Aitkin Pharmacy's goods and services. This argument is unpersuasive

for two reasons. First, the jury did not find that Aitkin Pharmacy caused Anderson emotional harm and, as outlined above, the evidence shows that Anderson could have received her prescription from Aitkin Pharmacy when the medication arrived. Second, and more importantly, the question before us when considering the denial of judgment as a matter of law is not whether the jury could have found in Anderson's favor on the public-accommodations claim against Aitkin Pharmacy. Rather, the question before us is whether there is *any reasonable theory* of the evidence that supports the verdict for Aitkin Pharmacy. *See id.* For the reasons set forth above, we conclude that Anderson has not met the high bar needed to demonstrate that she is entitled to judgment as a matter of law on this claim.[13]

**B.      The district court abused its discretion in denying Anderson a new trial based on the jury instructions related to the public-accommodations claim.**

Because we conclude that Anderson is not entitled to judgment as a matter of law on her public-accommodations claim, we turn to Anderson's arguments that she is entitled to a new trial for this claim. Anderson argues that she is entitled to a new trial on three grounds—erroneous jury instructions, the evidence at trial, and erroneous evidentiary rulings. We reach only Anderson's challenges to the jury instructions because we conclude that Anderson is entitled to a new trial on that basis.

Anderson argues that the district court erred in instructing the jury regarding the meaning of "full and equal enjoyment"; that the district court erred in denying her

---

[13] We would reach this same conclusion even if, as discussed below, the district court had not given erroneous jury instructions on the public-accommodations claims.

requested agency instruction; and that the district court erred in its "protected class" instructions. Consistent with our analysis of the district court's business-discrimination instructions, we must evaluate whether the challenged instructions, when read as a whole, "materially misstate[] the law" or are "apt to confuse and mislead the jury." *Domagala*, 805 N.W.2d at 29 (quotation omitted). We consider each challenged instruction in turn before addressing Anderson's entitlement to a new trial.

*Full-and-Equal-Enjoyment Instructions*

Anderson first challenges the district court's instructions related to full and equal enjoyment. Anderson argues that the district court's instructions are contrary to the plain language of the statute. She further contends that the district court's instructions improperly imposed a threshold that applies in the context of employment-discrimination claims under the MHRA but not public-accommodations claims. We agree.

Minnesota Statutes section 363A.11 states that it is a discriminatory practice "to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of . . . sex." Minn. Stat. § 363A.11, subd. 1(a)(1). The district court instructed the jury that "a violation of 'full and equal enjoyment' in the goods and services" occurs if Anderson "received a material disadvantage or a tangible change in conditions in the goods or services offered to the public." The district court further defined "material disadvantage" as "inferior service" and "tangible change in condition" as "more than minor differences in service or access to goods." The language included in the district court's instructions goes beyond the plain language of the statute.

33

"When jury instructions contradict the plain language of the statute or an interpretation of the statute previously adopted by [the Minnesota Supreme Court], they are erroneous." *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015). To determine whether the district court's instructions are consistent with the statutory language, we turn to Minnesota caselaw considering MHRA claims. *See Henry*, 988 N.W.2d at 880.

Although the parties have not identified any binding authority related to the required showing for a public-accommodations claim, we find persuasive this court's nonprecedential opinion declining to set a threshold level of adverse conduct to sustain a public-accommodations claim. *Bray v. Starbucks Corp.*, No. A17-0823, 2017 WL 6567695, at *8 (Minn. App. 2017), *rev. denied* (Minn. Mar. 20, 2018). In that case, a customer alleged that Starbucks employees treated him poorly because of his transgender status, including delayed service, rude treatment, and sexual comments. *Id.* at *1-2. The district court relied on hostile-work-environment cases to grant summary judgment against the plaintiff on the public-accommodations claim on the basis that "the conduct at issue in this case does not rise to the level of discrimination as contemplated by the MHRA." *Id.* at *7. We reversed, rejecting the business's arguments that the plaintiff was required to allege "objectively offensive conduct" and to show a denial of service. *Id.* at 7-8. We noted "the broad 'full and equal enjoyment' language" of the public-accommodations provision and concluded that "the plain language of the MHRA allows claims based on denial of equal enjoyment even if service was provided." *Id.* at *7 (quoting Minn. Stat. § 363A.11, subd. 1(a)(1)). We also rejected the business's argument for application of hostile-work-environment caselaw. *Id.* at *8. As a result, we concluded that, although

34

"[the plaintiff's] claim of adverse treatment is less severe than those in cases involving complete denial of access to goods or services from a place of public accommodation," we could not say "that the alleged conduct in this case does not rise to the level of public-accommodations discrimination contemplated by the MHRA." *Id.*

Badeaux's reliance on *Bilal v. Northwest Airlines, Inc.*, 537 N.W.2d 614 (Minn. 1995), to argue that a plaintiff must show a threshold level of adverse conduct to sustain a public-accommodations claim is unavailing. In *Bilal*, an airline employee informed a passenger, a Muslim woman, that she was violating the dress code and that she "should dress as if [she] were going to church." 537 N.W.2d at 615. In evaluating whether the plaintiff proved that the employee "possessed a discriminatory motive and intended to discriminate against [the plaintiff] because of her religion," the supreme court noted that the use of the word "church" "was not a normative evaluation of [the plaintiff's] religious affiliation or beliefs" and "does not possess the inherently derogatory qualities of an epithet." *Id.* at 619. The supreme court ultimately concluded that the plaintiff failed to prove that the employee possessed the requisite discriminatory motive when informing the plaintiff that she violated the dress code because the employee did not know she was Muslim and instead believed she was Christian. *Id.*

We do not read *Bilal* to impose a minimum threshold of adverse conduct to succeed on a public-accommodations claim. To the contrary, *Bilal* suggests that, if the employee enforced the dress code against the plaintiff and used the word "church" *because* the plaintiff was Muslim, the plaintiff may have established her claim of religious

35

discrimination. *See id.* Accordingly, *Bilal* does not require a minimum level of adverse conduct, much less a "material disadvantage" or "tangible change in conditions."

The phrases "material disadvantage" and "tangible change in conditions" included in the jury instructions are instead derived from the Minnesota Supreme Court's decision in *Bahr v. Capella University*, which considered what qualifies as an unfair discriminatory practice in employment under section 363A.08, subdivision 2(3), of the MHRA. 788 N.W.2d 76, 82-83 (Minn. 2010). In *Bahr*, the supreme court noted that, "in order for there to be racial discrimination that constitutes an unlawful employment practice, there must be some adverse employment action." *Id.* at 83. Then, relying on Title VII caselaw, the supreme court explained that "[a]n adverse employment action must include some tangible change in duties or working conditions" and that "[t]here must be some material employment disadvantage; minor changes in working conditions are insufficient." *Id.* The supreme court further quoted the Eighth Circuit's language that "[n]ot everything that makes an employee unhappy is an actionable adverse employment action." *Id.* (quoting *LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 691 (8th Cir. 2001)).

We disagree that the language from *Bahr* regarding an adverse employment action is applicable in the context of a public-accommodations claim. The language governing public-accommodations discrimination is distinct from the language governing unfair employment practices. Section 363A.08 provides, in relevant part, that "it is an unfair employment practice" to "*discriminate* against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subd. 2(3). "Discriminate," as defined by the MHRA, "includes

segregate or separate and, for purposes of discrimination based on sex, it includes sexual harassment." Minn. Stat. § 363A.03, subd. 13. By contrast, section 363A.11 provides that "[i]t is an unfair discriminatory practice . . . to *deny any person the full and equal enjoyment* of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation." Minn. Stat. § 363A.11, subd. 1(a)(1) (emphasis added). And dictionary definitions of the words "full" and "equal"—which we look to in the absence of a statutory definition—respectively include "[c]ontaining all that is normal or possible" and "[h]aving the same quantity, measure, or value as another." *American Heritage*, *supra*, at 709 (defining "full"), 601 (defining "equal"); *see Lagasse v. Horton*, 982 N.W.2d 189, 198 (Minn. 2022) ("When a term is not defined by statute, we may use dictionary definitions."). The legislature could have defined a violation of the public-accommodations provision as to "discriminate" in goods, services, facilities, privileges, advantages, or accommodations. But the legislature instead defined a violation of the public-accommodations provision as "to deny . . . full and equal enjoyment of" goods and services. Minn. Stat. § 363A.11, subd. 1(a)(1). In short, the legislature used different—and broader—language in the public-accommodations provision than it did in the employment-discrimination provision. *Cf. N.H. v. Anoka-Hennepin Sch. Dist. No. 11*, 950 N.W.2d 553, 560 (Minn. App. 2020) ("The plain language of the MHRA education provision differs from and provides a much broader prohibition against discrimination than the MHRA employment provision.").

Furthermore, as Anderson notes, requiring a threshold showing of a material disadvantage or a tangible change in condition to prove a public-accommodations claim is

37

not only inconsistent with the broader language of section 363A.11 but also inconsistent with the dignitary harms that public-accommodations laws are intended to guard against. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 625-26 (1984) (explaining, in interpreting the MHRA, that the "fundamental object [of Title II of the Civil Rights Act of 1964] was to vindicate the deprivation of personal dignity that surely accompanies denials of equal access to public establishments" (quotation omitted)). Thus, absent binding authority to the contrary,[14] there is no basis for incorporating the framework for the showing required for an adverse employment action into the jury instructions for a public-accommodations claim. *See N.H.*, 950 N.W.2d at 560-61 (concluding that a prior interpretation of the MHRA employment provision is not binding authority for the MHRA education provision because the provisions differ in scope and have different language).

In sum, the district court's instructions defining a "violation of 'full and equal enjoyment'" are inconsistent with the plain language of the public-accommodations provision and are not supported by caselaw interpreting that provision. We therefore hold that the district court materially misstated the law by instructing the jury that a denial of "full and equal enjoyment" required Anderson to prove that she experienced a material

---

[14] Badeaux and Aitkin Pharmacy direct us to a federal district court case, *Rumble v. Fairview Health Services*, applying the standard from *Bahr* to a public-accommodations claim. No. 14-CV-2037 (SRN/FLN), 2015 WL 1197415, at *19 (D. Minn. Mar. 16, 2015). "[F]ederal court interpretations of state law are not binding on state courts." *State by Hatch v. Emps. Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn. App. 2002). Moreover, the *Rumble* opinion does not explain why the standard to prove a claim under section 363A.08 applies to a claim under section 363A.11, and thus we do not find the opinion to be of persuasive value. *See Rumble*, 2015 WL 1197415, at *19.

disadvantage or tangible change in conditions in the goods or services offered to the public. *See Davis*, 864 N.W.2d at 176; *Domagala*, 805 N.W.2d at 29.

*Agency Instruction*

Anderson next challenges the district court's denial of her requested agency instruction on her public-accommodations claim against Aitkin Pharmacy. The district court's instructions included a "Multiple Defendants" instruction, which stated:

> There are two defendants in this lawsuit. Answer the questions for each defendant as though the lawsuits were being tried separately. Each defendant must be judged separately. Do not let your judgment about one defendant influence your judgment about the other. View these instructions separately as they apply to [Aitkin Pharmacy] and George Badeaux.

In addition, the public-accommodations instructions stated:

> To prevail on her claim of discrimination in public accommodation as to [Aitkin Pharmacy], Plaintiff Andrea Anderson must prove by a greater weight of the evidence that:
> 1.     She is a member of a protected class, and,
> 2.     That [Aitkin Pharmacy] denied her full and equal enjoyment in goods or services because of her sex.

Anderson objected to these instructions and requested that the district court instruct the jury that Aitkin Pharmacy is a corporation that can only act through its employees and that an employee's conduct, if within the scope of employment, is the corporation's conduct. The district court denied that request.

"A party is entitled to a specific jury instruction if evidence exists at trial to support the instruction." *Daly v. McFarland*, 812 N.W.2d 113, 122 (Minn. 2012) (quotation omitted). Principles of agency apply to MHRA claims brought against an employer for the discriminatory conduct of an employee. *See Bilal*, 537 N.W.2d at 619 (explaining that

39

plaintiff could have been successful had she shown discrimination "on the part of NWA or its employees"); *Potter v. LaSalle Sports & Health Club*, 368 N.W.2d 413, 416 (Minn. App. 1985) (concluding that an employee's enforcement of a company policy against plaintiff supported a prima facie case of public-accommodations discrimination by the company); *cf. Brisson*, 994 N.W.2d at 927 (concluding "it is appropriate to consider concepts of agency in determining whether vicarious liability applies to claims for sexual harassment in public services under the MHRA"). As a result, a business may be liable to a plaintiff for the discriminatory conduct of its employee when the employee is acting as an agent of the employer. *See Bilal*, 537 N.W.2d at 619; *Potter*, 368 N.W.2d at 416.

We conclude that there was evidence at trial that Badeaux was acting within the scope of his employment when he called Anderson such that Anderson was entitled to the requested agency instruction regarding Aitkin Pharmacy's liability for its employees' conduct. Aitkin Pharmacy's owner testified that Badeaux's treatment of Anderson's prescription was within the scope of his employment and consistent with Aitkin Pharmacy's emergency-contraception plan, and it is undisputed that Badeaux was the pharmacist-in-charge and on duty at the time of the phone call. Moreover, without the requested agency instruction, the multiple-defendants instruction informed the jury that Badeaux's and Aitkin Pharmacy's conduct should be considered separately. Thus, even though an employee's conduct may be considered when evaluating whether a plaintiff was denied full and equal enjoyment, *see Bilal*, 537 N.W.2d at 619, the instructions suggested that Badeaux's conduct could not be considered when evaluating Anderson's public-accommodations claim against Aitkin Pharmacy.

40

Our conclusion that the instructions did not fairly state the law is reinforced by the closing arguments. Anderson's counsel argued to the jury, "If you find that [Aitkin Pharmacy's] pharmacist-in-charge, [Badeaux], discriminated in his official employment following [Aitkin Pharmacy's] policies, you must also find that [Aitkin Pharmacy] discriminated." During Aitkin Pharmacy's closing, however, its counsel identified the multiple-defendants instruction and argued that "[t]his instruction says nothing about George Badeaux's actions being the actions of [Aitkin Pharmacy]. You need to read the instructions and follow what the judge tells you." Given this record, the district court's denial of the requested agency instruction meant that the jury instructions, considered as a whole, materially misstated the law and were "apt to confuse and mislead the jury." *See Domagala*, 805 N.W.2d at 29 (quotation omitted).

*Protected-Class Instruction*

Anderson's final challenge is to the district court's decision to instruct the jury that it had to find that Anderson is a member of a protected class. She argues that the district court should have instructed the jury that "sex is a protected class."

When considered as a whole, we conclude that the jury instructions do not materially misstate the law by suggesting that sex is not a protected class. The jury instructions asked the jury to determine whether "[Anderson] is a member of a protected class" and whether "[Aitkin Pharmacy] denied her full and equal enjoyment in goods or services because of her sex." And the instructions defined sex as "includ[ing], but is not limited to, pregnancy, childbirth, and disabilities related to pregnancy or childbirth. The ability to become pregnant is also included under the term 'sex.'" We recognize that the

41

jury instructions do not specifically inform the jury that sex is a protected class. But we are satisfied that the instructions, taken as a whole, would not lead the jury to believe that sex or pregnancy are not protected traits under the MHRA. Accordingly, we conclude that the jury instructions on protected class do not materially misstate the law and would not confuse or mislead the jury.[15] *See id.*

*Entitlement to a New Trial*

Because we conclude that the district court erred in instructing the jury regarding the standard for "full and equal enjoyment" and erred in denying the requested agency instruction, we must consider whether those errors entitle Anderson to a new trial. "[A] new trial is required if the jury instruction was erroneous and such error was prejudicial to the objecting party or if the instruction was erroneous and its effect cannot be determined." *Christie*, 911 N.W.2d at 838 (quotation omitted). Here, the jury found that Anderson proved she is entitled to damages of $25,000 from Badeaux for emotional harm but that Anderson did not prove she is entitled to damages from Aitkin Pharmacy. The jury also found that Anderson did not prove *any* of her MHRA claims against Badeaux or Aitkin Pharmacy. Thus, it is unclear on what basis the jury concluded that Anderson was entitled to damages against Badeaux and whether the jury would have evaluated the public-accommodations claim against Aitkin Pharmacy differently if the jury had received an agency instruction or accurate instructions related to "full and equal enjoyment."

_____

[15] Our conclusion that the instruction does not materially misstate the law is based on the instructions as a whole here. Our conclusion does not bind the selection of jury instructions related to protected class on remand.

Consequently, we cannot discern the effect that either of the jury-instruction errors may have had on the verdict. We therefore conclude that Anderson is entitled to a new trial on her public-accommodations claim against Aitkin Pharmacy. *See id.*

## IV. Aiding-and-Abetting Claim Against Badeaux

Finally, Anderson argues that she is entitled to judgment as a matter of law or a new trial on her aiding-and-abetting claim against Badeaux. To succeed on her aiding-and-abetting claim under the MHRA, Anderson must prove that (1) Aitkin Pharmacy's conduct violated the MHRA and (2) Badeaux knew that Aitkin Pharmacy's conduct constituted a violation of the act and gave substantial assistance or encouragement to that conduct. *See Matthews*, 800 N.W.2d at 830.

Here, our conclusion that the district court properly denied Anderson's motion for judgment as a matter of law and motion for a new trial related to the business-discrimination claim against Aitkin Pharmacy compels the conclusion that Anderson cannot succeed on an aiding-and-abetting claim premised on business discrimination. *See id.* But, because we conclude that Anderson is entitled to a new trial on her public-accommodations claim against Aitkin Pharmacy, Anderson is likewise entitled to a new trial on an aiding-and-abetting public-accommodations discrimination claim against Badeaux. On this record, we cannot discern the effect of the jury instructions on Anderson's public-accommodations claim against Aitkin Pharmacy and therefore cannot discern the effect that the instructions had on a claim against Badeaux premised on aiding and abetting public-accommodation discrimination. The appropriate remedy in these circumstances is a new trial. *See Christie*, 911 N.W.2d at 838.

43

We are not persuaded that we can affirm the judgment in Badeaux's favor on the aiding-and-abetting claim based on his argument that he cannot, as a matter of law, be liable for aiding and abetting Aitkin Pharmacy's discrimination. Badeaux asserts that he is the "only alleged discriminator" and that, based on the supreme court's decision in *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790 (Minn. 2013), he cannot be liable for aiding and abetting. In *Rasmussen*, the sole owner of two businesses was the only individual accused of sexual harassment, and the plaintiffs brought claims under the MHRA against both businesses for sexual harassment and against the owner for aiding and abetting that harassment. 832 N.W.2d at 791-92. The supreme court held that, under those circumstances, the owner could not be held liable as an aider and abettor. *Id.* at 801. In doing so, the supreme court explained that the businesses were liable only under a theory of vicarious liability and that recognizing the owner's liability as an aider and abettor would "create a strange and confusing circularity where the person who has directly perpetrated the harassment only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator." *Id.* (quotation omitted).

Here, however, Aitkin Pharmacy's liability to Anderson is not premised solely on vicarious liability for Badeaux's actions but rather on its independent conduct—maintaining an allegedly discriminatory plan for dispensing emergency contraception—as well as Badeaux's conduct. We therefore conclude that *Rasmussen* does not preclude a new trial on Anderson's aiding-and-abetting claim against Badeaux premised on aiding and abetting public-accommodations discrimination.

**DECISION**

Because reasonable minds cannot disagree that Badeaux intentionally refused to dispense Anderson's prescription for emergency contraception to her in violation of the MHRA, we reverse the denial of Anderson's motion for judgment as a matter of law on her claim for business discrimination against Badeaux and remand for entry of judgment in her favor on that claim. Anderson is entitled to a trial on both compensatory damages and punitive damages related to the business-discrimination claim against Badeaux. We also reverse the denial of Anderson's motion for a new trial on her public-accommodations claim against Aitkin Pharmacy and her aiding-and-abetting claim against Badeaux based on erroneous jury instructions, but we affirm the district court's denial of Anderson's motion for judgment as a matter of law on those same two claims. Finally, we affirm the district court's entry of judgment on the business-discrimination claim against Aitkin Pharmacy. Accordingly, we remand for further proceedings consistent with this opinion. Our conclusion that the challenged evidentiary rulings did not prejudice Anderson's ability to prove her business-discrimination claim against Aitkin Pharmacy does not preclude the district court from revisiting those rulings on remand with regard to Anderson's public-accommodations and aiding-and-abetting claims.

**Affirmed in part, reversed in part, and remanded.**